EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Francis Javier Santiago Maldonado<br><br>Recurrido<br><br>v.<br><br>Ruth N. Alvelo Rivera<br><br>Peticionaria | Certiorari<br><br>2026 TSPR 14<br><br>217 DPR ___ |

Número del Caso: AC-2025-0012

Fecha: 5 de febrero de 2026

Tribunal de Apelaciones

    Panel Especial

Representante legal de la parte peticionaria:

    Lcda. Mónica Longo Marrero

Representante legal de la parte recurrida:

    Lcdo. Harry Muñiz Valladares

Materia: Derechos reales – Un tercero poseedor de una propiedad vendida en ejecución de una sentencia de un proceso judicial en el que no fue parte puede presentar un interdicto posesorio contra el adquirente del inmueble en pública subasta.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

Francis Javier Santiago Maldonado

    Recurrido

        v.           AC-2025-0012

Ruth N. Alvelo Rivera

    Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 5 de febrero de 2026.

Han sido varias las ocasiones en que este Tribunal ha debido armonizar la **finalidad sumaria y pacificadora** del *interdicto posesorio* con situaciones procesales cada vez más complejas. Toda la jurisprudencia hasta el momento converge en un mismo núcleo: el interdicto posesorio existe para restablecer de inmediato el *status quo* fáctico (*o la posesión de hecho*), preservar la paz social y evitar que los ciudadanos se tomen la justicia en sus propias manos, sin prejuzgar la titularidad.

Con lo anterior en mente debemos evaluar si un tercero poseedor de una propiedad que resultó vendida en

ejecución de una sentencia de un caso de daños y perjuicios (en el cual no fue parte) puede presentar un interdicto posesorio contra la persona que adquirió un inmueble en pública subasta.

Por los fundamentos que expondremos a continuación resolvemos que, debido a que el mecanismo del interdicto posesorio atiende la posesión de hecho y no el derecho de la posesión ni su titularidad, un mandamiento judicial es ineficaz cuando una propiedad vendida en pública subasta se encuentra en manos de un tercero que no fue parte (ni fue citado) para la pública subasta. Así, pues, ante una orden y mandamiento ineficaz, el tercero poseedor puede valerse de la acción interdictal hasta tanto se resuelva el asunto de la titularidad en un pleito ordinario.

I

Como preámbulo a la controversia que este Tribunal se dispone a resolver, debemos repasar eventos acaecidos previo a la presentación y disposición de la causa de acción que nos ocupa.

**A. *Madeline Correa Rodríguez v. Dr. Edgardo M. Colón Ledeé*, Caso Civil Núm. KDP2012-0462 sobre daños y perjuicios.**

La Sra. Madeline Correa Rodríguez presentó una *Demanda* por daños y perjuicios en contra del Dr. Edgardo M. Colón Ledeé en el **2012** (de la cual el Sr. Francis Javier Santiago Maldonado (recurrido) nunca fue parte). Luego de varios trámites procesales que son innecesarios pormenorizar, el **1 de marzo de 2016,** el Tribunal de Primera Instancia dictó una *Sentencia* mediante la cual le ordenó al doctor Colón Ledeé a pagarle a la señora Correa Rodríguez $249,000 en concepto de daños y perjuicios y $10,000 para costas, gastos, honorarios de abogado y temeridad.

Surge del expediente que el **7 de diciembre de 2016,** ante la insuficiencia de bienes para satisfacer la *Sentencia*, la señora Correa Rodríguez presentó una moción para solicitar la designación del Apartamento 5-E Torre II del Condominio Isleta Marina ubicado en el Islote Cayo Obispo de Fajardo, como un bien a ser embargado. El Tribunal de Primera Instancia concedió la petición el **24 de enero de 2019** y ordenó la ejecución del inmueble en satisfacción de la *Sentencia*.

**B. Venta Privada de Apartamento 5-E mediante Escritura Pública Núm. 29 de Compraventa entre el Sr. Francis Javier Santiago Maldonado y el Dr. Edgardo M. Colón Ledeé**

En el interín, el **11 de mayo de 2022** el doctor Colón Ledeé le vendió al señor Santiago Maldonado el apartamento en controversia por $150,000. Esto, mediante Escritura Pública Núm. 29 de Compraventa autorizada por la notaria Saideth Cristóbal Martínez. Posteriormente, el **31 de diciembre de 2022** el referido negocio jurídico se presentó ante el Registro de la Propiedad y el Registrador lo inscribió el **7 de agosto de 2023 a las 4:17 pm como séptima inscripción.** Al momento de su inscripción había una anotación de Hogar Seguro y no existía anotación alguna de Aviso de Demanda o de Embargo en el Registro de la Propiedad.

El señor Santiago Maldonado entró en la posesión inmediata del inmueble desde que compró el apartamento. **Para el verano de 2023,** el señor Santiago Maldonado comenzó a realizar una remodelación completa. Por ello, decidió pernoctar en el apartamento 7-E de su hija ubicado en la misma torre del

Condominio Isleta Marina. Ello, debido a la presencia de liqueos y las condiciones inhabitables propias de la remodelación.

**C. Venta Judicial del Apartamento 5-E en el caso *Madeline Correa Rodríguez v. Dr. Edgardo M. Colón Ledeé*, supra.**

A raíz de la mencionada orden de ejecución de 24 de enero de 2019 para satisfacer la *Sentencia* y luego de varias incidencias, el Tribunal de Primera Instancia celebró la pública subasta el **6 de febrero de 2024** cuya buena pro la obtuvo la Sra. Ruth N. Alvelo Rivera (peticionaria). La venta judicial sobre la propiedad en cuestión se llevó a cabo el **27 de febrero de 2024.**

Antes de la referida transacción, el **21 de febrero de 2024**, la señora Alvelo Rivera, acompañada con dos alguacilas del foro primario y un cerrajero, irrumpió en el apartamento, rompió la puerta provisional colocada por el señor Santiago Maldonado —ya que la puerta principal se sacó para hacerle un molde de cemento— y cambió las cerraduras del apartamento 5-E.

Ahora bien, el señor Santiago Maldonado tuvo conocimiento de que el Tribunal de Primera Instancia ordenó la rectificación del tracto registral para eliminar la Escritura de Compraventa Núm. 29 con la que este adquirió la propiedad mediante una orden de 17 de julio de 2023 en el caso *Madeline Correa Rodríguez v. Dr. Edgardo M. Colón Ledeé*, supra.

Esta orden se presentó en el Registro de la Propiedad el 31 de julio de 2023 y el Registrador la inscribió el **7 de agosto de 2023 a las 4:35 pm como octava inscripción.** Es decir, el mismo día que el Registrador de la Propiedad inscribió la compraventa, pero 18 minutos más tarde. Ante este cuadro, el **26 de noviembre de 2023** el señor Santiago Maldonado presentó una acción de *Sentencia declaratoria sobre tercero registral de buena fe*

(*Sentencia declaratoria*), para impugnar la referida orden.[1] El señor Santiago Maldonado alegó que no había sido notificado de todo lo anterior porque no fue parte del pleito de daños y perjuicios que presentó la señora Correa Rodríguez.

Posteriormente, el **29 de octubre de 2024,** el señor Santiago Maldonado solicitó enmendar la *Demanda* de *Sentencia declaratoria* para acumular a la señora Alvelo Rivera e impugnar el proceso de subasta. Además, alegó que esta lo perturbó y lo despojó de su posesión mediante las actuaciones mencionadas en el acápite anterior.

Ahora bien, meses más tarde de haberse presentado la *Sentencia declaratoria,* el **8 de marzo de 2024** el señor Santiago Maldonado presentó la *Demanda* de interdicto posesorio e impugnación de embargo y subasta en contra de la señora Alvelo Rivera. Mediante este mecanismo reiteró el planteamiento esbozado en la *Sentencia Declaratoria,* pero enfatizó que procuraba la retención y recobro de la posesión del apartamento en cuestión. Lo anterior, toda vez que las acciones de la señora Alvelo Rivera constituyeron un despojo de la propiedad al romper y cambiar la cerradura colocada por él en el inmueble que poseía.

El señor Santiago Maldonado alegó que: (1) desde que adquirió la propiedad ha estado en posesión inmediata de esta y que sus pertenencias se encuentran allí; y (2) se encontraba realizando unas remodelaciones al mismo. Afirmó que en vista de que adquirió de buena fe el apartamento, procuró la acción

---

[1] *Francis Javier Santiago Maldonado v. Madeline Correa Rodríguez y otros*, Caso Núm. FA2023CV00997 de *Sentencia declaratoria sobre tercero registral de buena fe (Sentencia Declaratoria).* Destacamos que cuando el Sr. Francis Javier Santiago Maldonado presentó la *Sentencia Declaratoria* para impugnar la orden del 17 de julio de 2023 emitida por el Tribual de Primera Instancia que le ordenó al Registrador de la Propiedad a eliminar la Escritura de Compraventa Núm. 29 no se había celebrado la pública subasta y, por ende, tampoco la Sra. Ruth Alvelo Rivera había ejecutado las acciones que dieron base para la presentación de la acción interdictal.

interdictal para proteger el hecho de la posesión en lo que se dilucidaba la causa de acción de *Sentencia Declaratoria*.[2]

Por su parte, y en lo atinente a la controversia de autos, la señora Alvelo Rivera alegó que el señor Santiago Maldonado no cumplió con los requisitos del interdicto posesorio toda vez que ella adquirió la titularidad de la propiedad mediante un proceso judicial.

Tras celebrada la vista, el Tribunal de Primera Instancia dictó *Sentencia* mediante la cual declaró no ha lugar la petición. Fundamentó su dictamen en que el señor Santiago Maldonado "ni vivía ni vive allí", por lo que este no ostentó la posesión real del inmueble en el año inmediatamente precedente a la presentación del interdicto posesorio.[3] A su vez, dispuso que el acto de la codemandada de adquirir la propiedad mediante pública subasta no es un acto ilícito que merezca la interdicción posesoria.

En desacuerdo, el señor Santiago Maldonado acudió ante el Tribunal de Apelaciones y señaló que el foro primario erró en la apreciación de la prueba en cuanto a los requisitos del interdicto posesorio. A saber: la posesión del inmueble durante el año previo a la presentación de la demanda y que con las acciones de la señora Alvelo Rivera no se estableció que esta lo perturbó ni despojó de su posesión.

Atendidos los planteamientos de las partes, el Tribunal de Apelaciones emitió una *Sentencia* mediante la cual revocó al

---

[2] En cuanto a la segunda causa de acción sobre impugnación del embargo y de la subasta, el Sr. Francis Javier Santiago Maldonado desistió de esta toda vez que las alegaciones allí esbozadas se incluyeron en la causa de acción de *Sentencia Declaratoria*.

[3] *Sentencia* del Tribunal de Primera Instancia, *Certiorari*, *Apéndice*, págs.30-31.

Tribunal de Primera Instancia. Inconforme, la señora Alvelo Rivera acudió ante nos y señaló que el foro apelativo intermedio erró al concluir que esta perturbó al señor Santiago Maldonado cuando sus acciones estuvieron respaldadas por un mandamiento y una venta judicial que gozan de presunción de corrección y validez.

II

## A. Posesión

Nuestro ordenamiento jurídico confiere ciertos actos jurídicos a la *mera* tenencia de las cosas, protegiendo limitadamente a aquellos que las usan o las tienen y son perturbados o despojados de esa tenencia por un tercero.[4] Así, siguiendo la tradición civilista, se protege la posesión mirando solo la cara visible –el *corpus* ("tenencia" o "disfrute")— y deja para un proceso posterior la discusión sobre la cara oculta (el derecho).[5] Ello, independientemente de por qué la tiene o la procedencia jurídica de dicha tenencia, o sea, si ostentan título o no.[6]

El Código Civil, en el Artículo 704, distingue entre la *posesión natural* y la *posesión civil*.[7] La **posesión de hecho** (*o posesión natural*) se trata de una situación puramente fáctica en la que concurren dos (2) elementos: (1) *Corpus* –el señorío material sobre la cosa; la posibilidad real de usarla y excluir a otros; y (2) *Animus*– la voluntad mínima de mantener ese poder

---

[4] L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 8va ed., Madrid, Editorial Tecnos, 2012, Tomo 1, págs. 83-84.

[5] M. Izquierdo Encarnación, *Introducción a los Derechos Reales*, San Juan, Ed Segunda, 2021, pág. 60.

[6] Art. 703 del Código Civil de 2020, 31 LPRA sec. 7821.

[7] Art. 704 del Código Civil de 2020, 31 LPRA sec. 7822.

para custodiar o disfrutar, no necesariamente la de comportarse "como dueño".[8]

Por otro lado, la **posesión civil** lleva consigo la voluntad de poseer "como dueño" u objetivamente a través de conducta que exterioriza ese propósito.[9] Tiene la finalidad de adquirir o conservar el dominio (*animus domini*), cual se infiere mediante la exteriorización de actos afirmativos o progresivos del simple tenedor. Por consiguiente, todo aquel que sencillamente ejerza un señorío fáctico -sea inquilino, arrendatario, usufructuario, colono (agrícola), depositario, comodatario, al que tiene la cosa en prenda, y aun al que la tiene por la fuerza, clandestinamente o por ruegos, los cuales solo se hallan en la tenencia de la cosa- ostenta una "posesión de hecho" y está legitimado *prima facie* para ejercer la tutela interdictal.[10]

## B. Protección interdictal de la posesión

La fuente de la protección interdictal se encuentra en el Art. 724 del Código Civil de 2020, 31 LPRA sec. 7862, donde le reconoce el derecho a *todo* poseedor a ser respetado en su posesión. Por lo cual, aquel que sea inquietado en ella indebidamente debe ser amparado o restituido mediante los medios procesales que provee nuestro ordenamiento jurídico.[11] Para remediar tal agravio, el poseedor afectado tiene a su favor el recurso del interdicto o *injunction* posesorio, regulado por los Arts. 690-695 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3561-3566.

---

[8] L. Díez-Picazo y A. Gullón, *op. cit.*, págs. 98-99.

[9] *Íd.*, págs. 85-86.

[10] *Martorell v. Municipio*, 70 DPR 380, 385 (1949).

[11] Art. 724 del Código Civil de 2020, 31 LPRA sec. 7862.

El Art. 690 del Código de Enjuiciamiento Civil, *supra*, dispone lo siguiente:

> Se concederá un injunction para retener o recobrar la posesión material de propiedad inmueble, a instancia de parte interesada, siempre que ésta demuestre, a satisfacción del tribunal, que ha sido perturbada en la **posesión o tenencia** de dicha propiedad por actos que manifiesten la intención de inquietarle o despojarle, o cuando haya sido ya despojada de dicha posesión o tenencia.[12]

Por otro lado, para convertirse en acreedor de la tutela interdictal, el Artículo 691 dispone que, *supra*:

> La demanda será redactada y jurada de acuerdo con las disposiciones del Código de Enjuiciamiento Civil, y hará constar:
>
> (1) Que el demandante, **dentro del año precedente de la presentación de la demanda, estaba en la posesión real de la propiedad** que en dicha demanda se describe, si se trata de recobrarla, y estaba y está, si de retenerla.
>
> (2) Que ha sido perturbado o despojado de dicha posesión o tenencia.
>
> Deberá también describir claramente los hechos constitutivos de la perturbación o despojo, así como si dichos actos fueron realizados por el demandado o por otra persona por orden de éste.[13]

A tales efectos, nuestro ordenamiento jurídico provee este remedio de carácter sumario y extraordinario para quien sea despojado o perturbado en su posesión, según la misma disposición citada, pueda ser amparado o restituido en la misma.[14] Ahora bien, la acción interdictal tiene como finalidad "la protección del hecho de la posesión, sin perjuicio de los derechos de los interesados, los que pueden y deben ser dilucidados en una acción

---

[12] (Negrillas suplidas). Art. 690 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3561.

[13] (Negrillas suplidas). Art. 691 del *Código de Enjuiciamiento Civil*, 32 LPRA sec. 3562.

[14] *Manrique v. Álvarez,* 58 DPR 74 (1941).

plenaria".[15] Es decir, esta figura jurídica no entra a dirimir cuestiones de titularidad, sino más bien busca salvaguardar la posesión material, evitando el despojo arbitrario.[16] Hemos sostenido que para que proceda un *injunction,* basta para iniciar la causa de acción una demanda en la que se alegue que el demandante posee determinado inmueble, que ha sido objeto de actos perturbadores y de despojo por parte de los demandados, y que estos detentan dicha posesión.[17]

Respecto al remedio aludido, reiteramos que **"[no] es determinante si la posesión está o no justificada, sino más bien que haya una existencia de posesión de hecho que, en determinado momento, esté expuesta a perderse o ya se haya perdido".**[18]

Sobre este mecanismo, en *Miranda Cruz y otros v. S.L.G. Ritch*, 176 DPR 951, 962 (2009), examinamos dos controversias esenciales: (1) si la demanda de los pescadores (Miranda Cruz, Ramírez Sánchez y Acevedo Saltares) contra el matrimonio Ritch –propietarios registrales de la franja de terreno en cuestión— debía tramitarse como un interdicto posesorio; y (2) si la sentencia del Tribunal de Primera Instancia —confirmada por el Tribunal de Apelaciones— se ajustaba a la naturaleza de dicha acción. Según la prueba vertida, los demandantes y sus antecesores atravesaban un sendero dos y tres veces por semana para acceder a la playa; los demandados, tras acudir múltiples veces a las autoridades policiacas, pretendían cerrar el paso y

---

[15] *Miranda Cruz y otros v. S.L.G. Ritch*, 176 DPR 951, 968 (2009); *Janer v. Álvarez*, 75 DPR 37, 40 (1953).

[16] *Manrique v. Álvarez, supra.*

[17] *Véase Miranda Cruz y otros v. S.L.G. Ritch*, supra, pág. 962; *Buxeda, Jr. v. Escalera*, 47 DPR 647, 650 (1934).

[18] (Negrillas suplidas). *Miranda Cruz y otros v. S.L.G. Ritch*, supra, pág. 960.

privatizar el litoral. La *Demanda* describía con precisión el trayecto (desde el Faro de Rincón hasta la carretera PR-413) y denunciaba la perturbación ocurrida dentro del año anterior, cumpliendo así los presupuestos establecidos en el Código de Enjuiciamiento Civil.

Tras un análisis del expediente, concluimos que los peticionarios sí ejercitaron y probaron los elementos necesarios para presentar un interdicto posesorio: acreditaron el uso real y continuo del camino costero desde tiempo inmemorial (y dentro del año precedente a la presentación de la demanda) y demostraron que los recurridos lo habían bloqueado con muros de concreto y verjas, perturbando su posesión. Por lo tanto, revocamos los foros *a quo* porque estos se limitaron a adjudicar tanto la posesión como la titularidad de los demandados amparándose indebidamente en el conflicto de posesiones entre dos personas[19]. En esa ocasión, reafirmamos que la figura del interdicto posesorio protege **únicamente** el hecho de la posesión, incluso, y que puede incoarse contra el propio dueño o propietario inscrito del inmueble.[20] Ordenamos la restitución inmediata a los peticionarios en el uso del camino, dejando intacta la posibilidad de cualquier litigio sobre dominio o servidumbre de paso para ventilarse en las acciones pertinentes.

Al ejercer nuestra función revisora, reiteramos que los requisitos del Artículo 691 del Código de Enjuiciamiento Civil,

---

[19] En esa oportunidad se atendió al caso conforme al Art. 374 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 1448. Al presente y debido a la aprobación del nuevo Código Civil de Puerto Rico, Ley Núm. 55-2020, el referido articulado se sustituyó por el Art. 722 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7849. Este último ordenamiento jurídico es el aplicable al caso de marras.

[20] *Miranda Cruz y otros v. S.L.G. Ritch*, *supra*, pág. 969.

*supra*, no son meras formalidades, sino que, por el contrario, son requisitos *sine qua non* para lograr la protección posesoria.[21]

Así pues, en una demanda de interdicto posesorio el peso de la prueba recae sobre el demandante, quien debe demostrar *prima facie* (1) que dentro del año precedente a la presentación de la demanda estaba en posesión del inmueble; (2) que ha sido perturbado o despojado; y (3) describir los hechos constitutivos de la perturbación o despojo.[22]

En *Disdier Pacheco v. García*, 101 DPR 541 (1973), evaluamos una demanda de interdicto posesorio para recobrar la posesión de un solar de 820 metros cuadrados. El demandante alegó haber sido perturbado dentro del año legal cuando el demandado derribó la cerca divisoria y un rancho donde guardaba muebles. Pese a que los Arts. 690-695 del Código de Enjuiciamiento Civil, *supra*, le confieren a este remedio una naturaleza sumaria —vista dentro de quince días, mociones en el acto y sentencia sin demora—, la causa permaneció inerte hasta celebrarse más de siete años después.

El foro de instancia desestimó la acción, pero este Tribunal censuró la "inconcebible" demora en un remedio diseñado para resolverse de manera sumaria. Concluimos que el tribunal erró en adentrarse en la discusión de escrituras y reglas de exceso de cabida —cuestiones propias de una acción ordinaria—, desviándose del objeto exclusivo del interdicto: "mantener en la posesión al que la tiene y es perturbado en ella, sin que en

---

[21] *Íd.*

[22] *Íd.*, págs. 960-961.

dicho procedimiento puedan investigarse cuestiones de título".[23] A esos efectos, lo que se ventila es estrictamente el hecho de la posesión, dejando intacta la facultad de cualquier interesado a reclamar la titularidad en un pleito ordinario posterior. Así, pues, "es el hecho de la posesión…, no el derecho a su posesión, lo que puede litigarse en acciones interdictales para retener o recobrar la posesión de inmuebles".[24]

Debemos recordar que, dada la naturaleza sumaria de la acción, su ejercicio no está sujeto a los vaivenes de una acción ordinaria en que se dispute la titularidad. Ello garantiza que el adjudicador de hechos pueda restablecer de inmediato la paz social y la dignidad del poseedor.[25] Precisamente eso fue lo que reafirmamos en *Disdier Pacheco v. García, supra,* al censurar la falta de diligencia de más de siete años y recalcar que dicho mecanismo procesal no puede desviarse hacia controversias dominicales, ya que su objetivo exclusivo es proteger la **posesión de hecho** –la relación fáctica donde concurren el *corpus* y *animus*– y nada más.

En *Navedo v. Amato*, 70 DPR 673 (1949), este Tribunal atendió el reclamo de Doña Guillermina Navedo Vda. de Guerrero, quien alegó que el 27 de marzo de 1947 fue despojada de la planta alta de una vivienda alquilada, luego de que los arrendadores le habían entregado las llaves y aceptaron el pago del primer mes. A la mañana siguiente, la arrendadora cambió las cerraduras e introdujo sus muebles, impidiendo la mudanza de la arrendataria.

---

[23] *Disdier Pacheco v. García*, 101 DPR 541, 549 (1973); *Pérez v. Castro*, 52 DPR 574, 574 (1938).

[24] *Disdier Pacheco v. García*, *supra*, pág. 547; *Segarra Boerman v. Vilariño*, 92 DPR 314, 320 (1965).

[25] *Disdier Pacheco v. García*, *supra*, pág. 546; *Segarra Boerman v. Vilariño*, *supra*.

El foro primario negó el remedio alegando que nunca llegó a poseer materialmente el inmueble. Examinamos la prueba y constatamos que la arrendataria —a través de su hijo— el día anterior entró con las llaves, permaneció más de **una hora y cuarto**, realizó una limpieza inicial, depositó útiles domésticos y gestionó los servicios de utilidades. Tales actos, aunque ínfimos, constituyeron posesión real y efectiva a tenor con lo dispuesto en el derecho aplicable antes esbozado. Por ende, el desalojo perpetrado por los dueños registrales configuró un despojo que puede remediarse mediante el interdicto posesorio. Por lo tanto, revocamos la sentencia apelada, declarando con lugar el interdicto y ordenamos la restitución inmediata de la arrendataria.

Nótese que **el mero hecho de no residir físicamente de forma continua en el inmueble no es determinante, siempre que se evidencie actos de posesión en el año precedente a la presentación de la demanda.**

Ahora bien, en *Preston v. Maldonado*, 42 DPR 488 (1931), además de evaluar los requisitos sustantivos del interdicto posesorio consideramos la naturaleza del procedimiento previo a la acción interdictal. En esa oportunidad el trámite judicial anterior "se trataba de un mandamiento judicial expedido en ejecución de sentencia en una acción en cobro de dinero en que no fu[e] parte la persona que poseía la finca en concepto de dueño, resolviéndose que éste tenía derecho a un interdicto para retener la posesión".[26]

---

[26] *Rosado v. Valentín*, 65 DPR 571, 572-573 (1946) resumiendo los hechos de *Preston v. Maldonado*, 42 DPR 488 (1931).

Este precedente fue esencial cuando atendimos *Rosado v. Valentín* 65 DPR 571 (1946). Allí revocamos la desestimación de un interdicto porque el mandamiento de ejecución se dictó para desalojar a un tal Sr. Jesús Rosado (tercero) que —aunque poseía la casa "en concepto de dueño" desde antes que se instara la acción reivindicatoria contra su padre (Nicomedes Rosado)— no fue demandado ni citado. Confirmamos que, frente a ese déficit procesal, el poseedor puede acudir al interdicto y ser reinstalado, aun cuando la orden provenga de una sentencia firme y ejecutable. Además, **no se presentó evidencia que vinculara al señor Jesús Rosado con la defensa del pleito original** ni que desmintiera su posesión continua. A la luz de estos hechos, reiteramos lo decidido en *Preston v. Maldonado*, *supra*, en cuanto a que "el interdicto posesorio procede cuando la persona desposeída en virtud de mandamiento judicial demuestra la ineficacia de éste".[27] Por lo tanto, concluimos que el mandamiento judicial le era inoponible al señor Jesús Rosado y que, al haber sido despojado de su posesión, tenía derecho a ser restituido mediante el interdicto posesorio.[28] Este precedente encarna la misma lógica que rige todo interdicto posesorio: un remedio *extraordinario*, *rápido* y *limitado* a determinar si **A** tenía la posesión de hecho, y **B** lo perturbó o despojó dentro del año anterior.

Lo anterior demuestra que la jurisprudencia es clara en que cuando el poseedor no fue parte del proceso judicial del cual se ejecuta una sentencia en un pleito es prueba suficiente de que el mandamiento judicial carece de eficacia jurídica frente a

---

[27] *Rosado v. Valentín*, 65 DPR 571,572(1946).

[28] *Preston v. Maldonado*, 42 DPR 488 (1931).

él.[29] La ineficacia es una idea negativa que denota la falta de eficacia, carencia total de efecto.[30] Hemos resuelto que una orden que afecta a personas que no fueron parte y en consecuencia la sentencia que se dicte a favor o en contra, no los obliga, pues esa orden y las consecuencias jurídicas que con ella se pretende carecen de eficacia.[31] Por lo tanto, al ser ineficaz frente al tercero que no fue parte ni fue citado ni notificado, cobra vida la disponibilidad de la tutela interdictal prevista en nuestro ordenamiento jurídico en favor del poseedor.[32]

**C. Estándar de revisión de apreciación de la prueba**

Por último, en materia de apreciación de la prueba es norma firmemente establecida que los foros apelativos le deben gran respeto y deferencia a las determinaciones fácticas y adjudicaciones de credibilidad de los foros primarios.[33] De modo que las decisiones del foro de instancia están revestidas de una presunción de corrección.[34] En síntesis, si la actuación del tribunal *a quo* no está desprovista de base razonable lo lógico es que prevalezca el criterio del foro primario.[35]

Ello se debe a la capacidad de estar en una mejor posición para evaluar y adjudicar la prueba testifical presentada ante

---

[29] *Rosado v. Valentín*, supra; *Rodríguez v. Toral*, 62 DPR 44 (1943).

[30] Véase concepto "ineficacia" en Miguel Antel del Arco Torres, Manuel Pons González, *Diccionario de derecho civil,* Editorial COMARES, Granada, 1999, pág. 714 citando a L. Díez-Picazo y Ponce De León, *Lecciones de derecho civil*, 1965, Tomo II, pág. 179. ("Si los juristas obráramos con lógica al rotular los fenómenos jurídicos tendríamos que establecer alguna graduación, Por ejemplo: (1) lo 'ineficaz, cuando no se da ningún efecto, […]".) *Íd.*

[31] *Caguas L.Y., Inc. v. Tribunal Superior*, 96 DPR 848, 855-856 (1969).

[32] *Pérez Ríos v. Hull Dobbs*, 107 DPR 834 (1978); *Rosado v.* Valentín, *supra*.

[33] *Serrano Muñoz v. Auxilio Mutuo, 171 DPR 717, 741 (2007).*

[34] *Vargas v. González, 149 DPR 859, 866 (1999).*

[35] *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 273 (2021); *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).

ellos al poder apreciar directamente la forma y comportamiento en que los testigos testifican y las circunstancias que acompañan tales declaraciones.[36] Por eso, los tribunales revisores no deben intervenir salvo que se demuestre prejuicio, un craso abuso de discreción o error en la aplicación de normas procesales o sustantivas.[37] De manera que la intervención de un foro apelativo procede únicamente tras un análisis integral de dicha prueba que genera una insatisfacción o intranquilidad de conciencia que estremezca el sentido básico de justicia.[38] Este análisis en el ejercicio de la discreción judicial está estrechamente relacionado con el concepto de razonabilidad.[39]

Por el contrario, esa norma de autolimitación cede cuando el tribunal incurre en un craso abuso de discreción, *i.e.*, cuando ignora hechos materiales importantes, otorga un peso indebido a hechos irrelevantes, toma decisiones basadas en una apreciación errónea o calibra livianamente los hechos materiales e importantes.[40]

## III

De entrada, la controversia que tenemos ante nuestra consideración es la procedencia o no de una tutela interdictal contra una persona que adquirió la propiedad en pública subasta de quien la compró mediante negocio jurídico privado. En otras palabras, este Tribunal no está dirimiendo asuntos de

---

[36] *Barreto Nieves et al. v. East Coast*, 213 DPR 852 (2024).

[37] *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013).

[38] *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 341 (2009).

[39] *VS PR, LLC v. Drift-Wind*, *supra*.

[40] *Íd*.

titularidad, sino estrictamente la disponibilidad de la tutela interdictal para la cuestión planteada ante este Tribunal.

Como mencionamos, **la tutela interdictal no tiene como objeto adjudicar la titularidad, sino preservar la paz social al restituir o preservar la posesión de hecho mientras las controversias de dominio se dilucidan por la vía ordinaria.** La tutela interdictal no depende de la titularidad registral ni de la procedencia jurídica de la tenencia, sino que basta el ejercicio ininterrumpido del mero hecho posesorio –aseverado y establecido dentro del año anterior— para activar el *injunction* regulado por los Arts. 690-695 del Código de Enjuiciamiento Civil, *supra*.[41] A la luz de este principio rector, procede examinar si en el presente caso se cumplen con los requisitos para el señor Santiago Maldonado valerse de la protección posesoria.

Nos encontramos ante el escenario de dos personas que alegan ser dueños del mismo inmueble. Por un lado, uno alegó que lo adquirió por la vía judicial (por lo que ostenta una presunción de validez) y el otro mediante negocio jurídico privado otorgado ante notario e inscrito en el Registro de la Propiedad. A tenor con los sucesos acaecidos entendemos que el foro primario erró al perder de vista el núcleo mismo del interdicto posesorio y abusó de su discreción al no concederle el mismo al señor Santiago Maldonado. Veamos.

Según expusimos en el recuento fáctico y según surge del expediente, tras adquirir el apartamento 5-E el 11 de mayo de 2022, el señor Santiago comenzó a vivir allí, entrando en la

---

[41] Arts. 690-695 del *Código de Enjuiciamiento Civil*, 32 LPRA sec. 3561-3566.

posesión inmediata del inmueble. La transcripción de la prueba oral revela que para después del verano de 2023 el recurrido comenzó a realizar una remodelación mayor. Debido a esto, la presencia de liqueos del piso de arriba y las condiciones inhabitables propias del proceso de remodelación, el señor Santiago Maldonado comenzó a pernoctar en el apartamento 7-E de su hija ubicado en la misma Torre del Condominio Isleta Marina.

Como parte de la remodelación, el recurrido ordenó construir un marco con una puerta nueva para la entrada y colocó una temporera para proteger sus pertenencias que se encontraban dentro la propiedad. De manera que, a pesar de que el señor Santiago Maldonado no estaba físicamente en la propiedad cuando presentó el interdicto, es incuestionable que el requisito temporal del Artículo 691 —posesión real dentro del año anterior a la radicación— se cumple al pie de la letra. La demanda se presentó el **8 de marzo de 2024**; y para **marzo de 2023**, tal cual como surge del expediente,[42] el señor Santiago Maldonado residía en el apartamento 5-E. No fue hasta adentrado el verano de 2023, cuando —por liqueos provenientes del piso superior y el ambiente inhóspito de la remodelación— se mudó temporeramente al apartamento 7-E de su hija **sin abandonar la tenencia**, a saber: comenzar una remodelación completa del inmueble, almacenar sus pertenencias personales y enseres electrodomésticos en la propiedad, la cerradura permanecía bajo su control y las frecuentes visitas al inmueble. De modo que, aun tomando por cierta las determinaciones de hechos probados por el foro primario, la falta de posesión dentro del año precedente se

---

[42] *Sentencia* del Tribunal de Primera Instancia, *Certiorari*, Apéndice, págs. 27-28.

desmorona. Esto es, para marzo de 2023 el señor Santiago Maldonado cumplió plenamente con el requisito para prevalecer en una acción de interdicto posesorio. Lo anterior, incluso tras analizar los actos afirmativos que el señor Santiago Maldonado llevó a cabo para configurar la posesión de hecho.

Primero, surge de las propias determinaciones de hechos del Tribunal de Primera Instancia que este consignó que el señor Santiago Maldonado residía en el apartamento 5-E al menos hasta el verano de 2023. La demanda se presentó el 8 de marzo de 2024; por consiguiente, su posesión material durante los meses de marzo a junio de 2023 cae dentro del año exigido por el Artículo 691 del Código de Enjuiciamiento Civil, *supra*.

Segundo, está acreditado que el 21 de febrero de 2024 la señora Alvelo Rivera, acompañada por dos alguacilas y un cerrajero llegó al apartamento y cambió las cerraduras. Dicho acto constituye el despojo que el interdicto tanto busca remediar.

Tercero, hemos establecido que la posesión **no tiene que estar justificada, es suficiente la existencia de la posesión de hecho y que esta esté expuesta a perderse o ya se haya perdido.**[43] Asimismo, el interdicto posesorio **puede ejercerse incluso contra el propietario registral o el propio dueño**, esto porque el remedio sumario no considera asuntos de titularidad, solo restituye la paz social hasta que en una acción ordinaria se dirima el dominio.[44] Tal realidad jurídica no cambia por el hecho

---

[43] *Miranda Cruz y otros v. S.L.G. Ritch*, *supra*, pág. 960.

[44] Con el interdicto posesorio se "instituyó un remedio de naturaleza sumaria para proteger al poseedor de un inmueble, aun contra el propio dueño[,] cuando se pretendiere despojar al poseedor de su posesión (interdicto para retener), o se hubiere desposeído a éste (interdicto para recobrar), siempre que el demandante, 'dentro del año precedente de la presentación de la demanda, estaba en la posesión

de que el inmueble en cuestión fuera adquirido por la parte demandada mediante pública subasta, autorizada por una orden de ejecución de un tribunal.

Cuarto, tal como consideramos en *Preston v. Maldonado*, supra, la naturaleza de la causa de acción que dio base a la presentación de la acción interdictal fue una demanda de daños y perjuicios donde el tribunal pronunció una sentencia en contra del doctor Colón Ledeé. Para ejecutar el dictamen, se vendió en pública subasta el apartamento como si este le perteneciera y estuviera en posesión del doctor Colón Ledeé (demandado en esa causa de acción). Debemos tener en cuenta que "cuando alguno gana en el pleito una cosa inmueble, debe ponérsele inmediatamente en posesión, **tal precepto se entiende <u>si la cosa está en poder de quien</u> con arreglo [a] la sentencia ejecutoria <u>deba entregarla</u>, no cuando la posea un tercero [a] quien legalmente no pueda afectar la demanda […], no puede la recurrente ser desposeída sin antes habérsele oído y vencido en juicio** […]".[45] Por lo tanto, debido a que el señor Santiago Maldonado no fue parte del pleito y **se encontraba en posesión del apartamento,** para efectos de la tutela interdictal, quedó demostrado que el mandamiento judicial carecía de eficacia en su contra. En otras palabras, la orden no tenía efecto legal alguno frente al señor Santiago Maldonado que impidiera que ejercitara su derecho que como poseedor garantiza el interdicto posesorio.

---

real de la propiedad que en dicha demanda se describe, si se trata de recobrarla, y estaba y está, si de retenerla'". *Disdier Pacheco v. García, supra*, pág. 544.

[45] *Íd.,* pág. 573. Esto cobra mayor relevancia cuando el foro primario antes de dictaminar que el señor Santiago Maldonado no podía valerse de la acción interdictal expresó comprender la lamentable situación que él enfrentaba al ver que el apartamento que compró a un tercero fue subastado en un pleito del cual no fue parte en un caso judicial con otras partes y sobre otra materia y ante la consideración de otro juez. Véase *Sentencia* del Tribunal de Primera Instancia, *Certiorari, Apéndice*, pág. 31.

Al dictaminar que el señor Santiago Maldonado "ni vivía ni vive allí", el foro de instancia: (1) no consideró su propia determinación de que este poseyó hasta el verano de 2023; (2) invirtió su análisis al no tomar en cuenta la posesión de hecho y enfocarse en la presunción de validez del mandamiento judicial, materia reservada para el caso *subjudice* de la declaración de tercero registral. Una vez constatado que el señor Santiago Maldonado estaba en posesión material dentro del año precedente a la demanda y el acto de despojo por parte de la señora Alvelo Rivera, la protección debió concederse *ipso facto*. Los demás asuntos, entre otros, la inscripción o cancelación de la anotación de embargo previa a la inscripción de la Escritura Núm. 29 de Compraventa en el Registro de la Propiedad, son materia que deben considerarse en la causa de acción de *Sentencia Declaratoria*.

IV

Por los fundamentos antes esbozados, confirmamos al Tribunal de Apelaciones, y a su vez, se devuelve el caso al Tribunal de Primera Instancia para que continúe los procesos conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Francis Javier Santiago Maldonado

    Recurrido

        v.               AC-2025-0012

Ruth N. Alvelo Rivera

    Peticionaria

## SENTENCIA

En San Juan, Puerto Rico, a 5 de febrero de 2026.

Por los fundamentos antes expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, confirmamos al Tribunal de Apelaciones, y a su vez, se devuelve el caso al Tribunal de Primera Instancia para que continúe los procesos conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una Opinión disidente. La Jueza Asociada señora Pabón Cherneco no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Francis Javier Santiago Maldonado

    Recurrido

       v.

Ruth N. Alvelo Rivera

    Peticionaria

AC-2025-0012

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 5 de febrero de 2026.

A contraviento del ordenamiento jurídico, la mayoría de mis compañeros y compañeras de estrado deciden equivocadamente que el recurrido puede ampararse en un interdicto posesorio en contra de un mandamiento judicial de desposesión, bajo el fundamento de que no formó parte del proceso que culminó en dicha desposesión. Esta conclusión pasa por alto un hecho determinante: **el recurrido adquirió el inmueble en cuestión sujeto a una anotación de embargo inscrita en el Registro de la Propiedad.**

Nuestro ordenamiento es claro al establecer que, **para la ejecución de un embargo, no es requisito que el tercero poseedor que adquiere el bien con posterioridad a su anotación registral sea parte del**

**pleito original.** El principio de publicidad registral y las salvaguardas procesales que la ley provee imponen al adquirente la carga de atenerse a las consecuencias de la ejecución. En ese contexto, para acogerse a la excepción de ineficacia del mandamiento judicial, resulta insuficiente sostener que el recurrido no formó parte del pleito.

Ciertamente, el error de la mayoría emana de una aplicación automática de la norma enunciada en Rosado v. Valentín, infra, y Preston v. Maldonado, infra, pues, sin tomar en consideración las circunstancias del caso, exceptúan al recurrido de la orden de desposesión por no formar parte del proceso. Con esta decisión, este Tribunal avala implícitamente una norma que se derrota a sí misma, a saber: Un tercero adquirente de un inmueble sujeto a anotación de embargo tiene derecho a instar un interdicto posesorio precisamente porque no formó parte del proceso de ejecución de embargo, a pesar de que la ley no requiere su participación en dicho proceso. Es decir, el proceso X no requiere la participación de Y, pero Y podrá instar una acción en contra del proceso X porque no participó en este.

Como cuestión más fundamental, la mayoría no evalúa correctamente el hecho de que **la desposesión del recurrido fue por autoridad judicial y no por elección de la peticionaria.** Esto es, este Tribunal ignora que la protección posesoria interdictal ampara solo la perturbación **indebida** de la posesión, entiéndase, la desposesión contraria al orden público. Así pues, la controversia real ante nuestra consideración es la siguiente: ¿Fue indebidamente perturbada la posesión del recurrido? Para resolver acertadamente esta

interrogante, procede analizar la controversia en el orden siguiente: en primer lugar, debemos determinar si la causa interdictal satisface el requisito de perturbación indebida; en segundo lugar, de no cumplirse dicho requisito por haber mediado una desposesión por orden del tribunal, corresponde entonces evaluar si al recurrido le cobija la excepción de ineficacia del mandamiento judicial. Puesto que la mayoría tomó otro sendero, disiento respetuosamente.

Antes de entrar en materia, destaco que el tracto procesal enlazado a la disputa que hoy resolvemos resulta confuso, pues se bifurca en distintos procedimientos judiciales. De tal manera, conviene enfatizar que adjudicamos únicamente la procedencia del remedio interdictal para recobrar la posesión de un inmueble.

I

La controversia de marras tiene su raíz en un pleito que no está ante nuestra consideración. A saber, en 2012 la Sra. Madeline Correa Rodríguez demandó al Dr. Edgardo Colón Ledeé por impericia médica. El epígrafe de ese caso es <u>Madeline Correa Rodríguez v. Dr. Edgardo M. Colón Ledeé</u>, Núm. KDP-2012-0472. El 1 de marzo de 2016, el Tribunal de Primera Instancia dictó una sentencia a favor de la señora Correa Rodríguez, a tenor de la cual ordenó al doctor Colón Ledeé pagar ciertas sumas en concepto de daños. Ante la insuficiencia de bienes para satisfacer la sentencia, el 7 de diciembre de 2016 la señora Correa Rodríguez solicitó el embargo de un bien inmueble perteneciente al facultativo descrito como el Apartamento 5-E de la Torre II del Condominio Isleta Marina en Fajardo. El foro

primario declaró con lugar la petición y el 24 de enero de 2019 expidió los mandamientos correspondientes para anotar el embargo y ejecutar la sentencia.

Empero, el 7 de diciembre de 2020 la señora Correa Rodríguez acudió nuevamente al tribunal sentenciador para informar que el Registrador de la Propiedad no anotó el embargo sobre el bien inmueble por defectos en el documento judicial. En respuesta, el 22 de enero de 2021 el Tribunal de Primera Instancia emitió un mandamiento para subsanar el defecto. Según surge del tracto registral, **el 12 de marzo de 2021 se presentó la instancia afín y el 8 de febrero de 2022 el Registrador de la Propiedad anotó el embargo sobre el inmueble.**

**Luego de anotado el embargo, el 11 de mayo de 2022 el doctor Colón Ledeé le vendió el bien inmueble al recurrido, el Sr. Francis J. Santiago Maldonado, mediante escritura pública de compraventa**, la cual fue presentada para su inscripción el 31 de diciembre de 2022. Según surge de las alegaciones de la demanda del recurrido, la escritura de compraventa se inscribió el 7 de agosto de 2023. En la sección de "Documentos Pendientes de Inscripción" de esa escritura, se consigna la anotación de embargo del 8 de febrero de 2022, así como una observación del notario autorizante sobre su presunta improcedencia por estar previamente inscrita una designación de hogar seguro. Apéndice del Alegato de la parte apelada, Tribunal de Apelaciones, págs. 57-58. A pesar de que la fecha de la anotación de embargo en el Registro de la Propiedad es un hecho crucial para poder adjudicar la controversia correctamente, ya que precede la

compraventa del recurrido, este hecho no consta en la Opinión mayoritaria.

Después de múltiples incidencias procesales que frustraron la ejecución y subasta pública del inmueble, el 11 de julio de 2023 la señora Correa Rodríguez presentó una solicitud para que el foro primario rectificara el tracto registral del inmueble. El 17 de julio de 2023, el Tribunal de Primera Instancia ordenó la rectificación del tracto registral a los fines de eliminar la designación de hogar seguro, la escritura de compraventa por la cual el señor Santiago Maldonado adquirió el inmueble y cualquier otra transacción ilegítima.

Con motivo de que el Registro de la Propiedad eliminó su compraventa del tracto registral, el 26 de noviembre de 2023 el señor Santiago Maldonado presentó una acción de sentencia declaratoria sobre tercero registral de buena fe. El epígrafe de ese caso es _Francis Javier Santiago Maldonado v. Madeline Correa Rodríguez y otros_, Núm. FA2023CV00997. Sobre esa acción independiente, nos limitamos a señalar que se impugna la orden del 17 de julio de 2023 que requirió la rectificación registral en el caso _Madeline Correa Rodríguez v. Dr. Edgardo M. Colón Ledeé_, Núm. KDP-2012-0472. Cabe resaltar que el señor Santiago Maldonado, a pesar de instar la demanda de sentencia declaratoria, **no solicitó intervenir en el proceso de ejecución de sentencia** del caso de impericia médica.

Finalmente, la subasta pública en el caso _Madeline Correa Rodríguez v. Dr. Edgardo M. Colón Ledeé_, Núm. KDP-2012-0472, se celebró el 6 de febrero de 2024. El señor Santiago Maldonado no fue notificado de dicha subasta ni participó en ella, porque no

era parte en el caso. Por su parte, **la peticionaria, la Sra. Ruth N. Alvelo Rivera, licitó en la subasta pública del inmueble y se le adjudicó la buena pro**. La señora Alvelo Rivera es un tercero ajeno al pleito, pues se enteró de la subasta pública mediante un edicto en un periódico de circulación general. Adjudicada la subasta, el Tribunal de Primera Instancia levantó el acta de venta judicial correspondiente. Según surge del expediente, la certificación registral expedida el 12 de febrero de 2024 indicaba que el señor Colón Ledeé era el titular registral del inmueble ejecutado. Por ende, la orden se dirigió contra el deudor registral.

El 21 de febrero de 2024, **con la autorización del tribunal y acompañada por alguaciles, la señora Alvelo Rivera tomó posesión del inmueble.** Posteriormente, el 27 de febrero de 2024 se autorizó la escritura de venta judicial otorgada por la Administración de Tribunales y la peticionaria.

Ante ese escenario, el 8 de marzo de 2024 el señor Santiago Maldonado instó ante el foro primario la acción interdictal objeto de nuestro examen adjudicativo. La solicitud original acumulaba las acciones de interdicto posesorio e impugnación de embargo y subasta, aunque luego el señor Santiago Maldonado desistió de la acción de impugnación porque estaba cubierta por el pleito separado de sentencia declaratoria. En esta instancia, el recurrido solicitó recuperar la posesión del inmueble mientras se dilucida la demanda de sentencia declaratoria, puesto que, según alegó, poseyó el inmueble hasta que la peticionaria lo despojó.

Tras celebrar una vista evidenciaria, el 17 de mayo de 2024 el Tribunal de Primera Instancia notificó una sentencia en la cual declaró no ha lugar la solicitud de interdicto posesorio. El foro primario fundamentó su decisión en que, por un lado, no se probó que el señor Santiago Maldonado poseyera el inmueble durante el año inmediatamente anterior a la presentación de la demanda de interdicto y, por otro lado, no se derrotó la presunción de validez que cobija al dictamen judicial relacionado con la subasta pública. Contundentemente, el foro primario aseveró que "[n]o puede usarse el interdicto posesorio para —*de facto*— declarar nulo un proceso de embargo y subasta decretado en un proceso judicial distinto […]. El interdicto posesorio, es y solamente es, una acción inherentemente posesoria". <u>Apéndice de la apelación</u>, pág. 31.

Inconforme, el 13 de junio de 2024 el señor Santiago Maldonado presentó un recurso apelativo ante el Tribunal de Apelaciones. Sostuvo que el Tribunal de Primera Instancia erró al concluir que no se presentó prueba suficiente para establecer los requisitos del interdicto posesorio. El 17 de enero de 2025, el Tribunal de Apelaciones notificó una sentencia mediante la cual revocó el dictamen del Tribunal de Primera Instancia. El foro intermedio concluyó que la prueba sí demostró que se cumplieron los requisitos del interdicto posesorio, aunque no tomó en consideración el hecho de que la toma de posesión de la señora Alvelo Rivera fue en virtud de un mandamiento judicial.

El 12 de febrero de 2025, la señora Alvelo Rivera presentó un recurso de apelación ante este foro para que revoquemos la sentencia dictada por el Tribunal de Apelaciones. En su recurso,

sostiene que el foro intermedio erró al determinar que el señor Santiago Maldonado fue perturbado en su posesión. En cambio, el señor Santiago Maldonado alegó que sí hubo una perturbación ilegal. Arguyó que nunca formó parte del caso que culminó en la subasta pública y venta judicial del inmueble, ni se le notificaron sus incidencias procesales, por lo que se le privó de su propiedad sin el debido proceso de ley.

Acogido el recurso como un *certiorari*, el 28 de marzo de 2025 decidimos expedir el auto. Con el beneficio de la comparecencia de las partes, procedemos a adjudicar el caso en sus méritos.

## II

### A. *La protección interdictal de la posesión*

El Art. 724 del Código Civil de Puerto Rico consigna la tutela interdictal para proteger la posesión de un bien. Este artículo dicta que: "Todo poseedor tiene derecho a ser respetado en su posesión; si es inquietado en ella indebidamente, debe ser amparado o restituido en dicha posesión por los medios que la ley procesal establece". Art. 724 del Código Civil de Puerto Rico, 31 LPRA sec. 7862. La ley procesal a la cual hace referencia esta disposición es el Código de Enjuiciamiento Civil, particularmente sus Arts. 690-695, 32 LPRA secs. 3561-3566.

El Art. 690 del Código de Enjuiciamiento Civil permite a una parte obtener un *injunction* o interdicto para retener o recobrar sumariamente la posesión material de un bien inmueble si demuestra que ha sido perturbada en la posesión o tenencia del bien por actos que manifiesten la intención de inquietarle

o despojarle, o cuando ha sido efectivamente despojada de la posesión o tenencia del bien. Art. 690 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3561. A su vez, el Art. 691 del Código de Enjuiciamiento Civil contiene los requisitos específicos para la demanda de interdicto posesorio. A saber, adicional a que la demanda debe ser jurada, el Art. 691 requiere del demandante lo siguiente: (1) alegar que poseía el bien dentro del año precedente a la fecha de presentación de la acción interdictal; (2) describir el bien poseído; (3) sostener que ha sido inquietado en su posesión; (4) alegar claramente el acto de perturbación o despojo, y (5) indicar si el demandado fue el autor directo o indirecto de dicho acto. Art. 691 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3562.

Antaño, hemos reiterado que el fundamento del remedio interdictal es preservar la paz social y evitar que las personas tomen la justicia en sus manos. _Miranda Cruz y otros v. S.L.G. Ritch_, 176 DPR 951, 968 (2009); _Segarra Boerman v. Vilariño_, 92 DPR 314, 315 (1965). Por ello, no es determinante para la procedencia del interdicto posesorio si la posesión está o no justificada. Esto implica que la acción interdictal no es el lugar para dirimir asuntos de titularidad. _Miranda Cruz y otros v. S.L.G. Ritch_, _supra_, pág. 960. En consecuencia, la figura del interdicto posesorio no solo se limita a dilucidar el hecho de la posesión, sino que protege exclusivamente la posesión. _Íd._, pág. 969.

### B. El requisito de perturbación indebida

Crucial a nuestros fines, corresponde destacar que la protección posesoria del Art. 724 del Código Civil no

salvaguarda contra cualquier perturbación de la posesión, sino solo aquella que sea indebida. En efecto, dicho precepto protege exclusivamente al poseedor que sea "inquietado en [su posesión] **indebidamente**". (Énfasis suplido). Art. 724 del Código Civil, 31 LPRA sec. 7862. Es menester señalar que el adverbio "indebidamente" no constaba en el texto análogo del derogado Art. 375 del Código Civil de 1930, 31 LPRA ant. sec. 1461. Sin embargo, el Memorial Explicativo del Código Civil de 2020 guarda silencio en cuanto a la inserción y el alcance de dicho adverbio. M. R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, 2da ed., San Juan, Ed. SITUM, 2021, T. 3, pág. 41.

Pese a esta laguna en el historial legislativo, el requisito de inquietud indebida constituye doctrina jurisprudencial bien arraigada en nuestro Derecho. En Teissonnier v. Barnés, 8 DPR 204 (1905), expresamos que el interdicto posesorio procede cuando "el que se creyese con mejor derecho á la posesión de una cosa, se entrase en ella de su propia autoridad y despojare al poseedor, ó le perturbare en su posesión […]". Íd., págs. 210-211. En cambio, "si lejos de hacerlo así acudía al Juez y éste en uso de su autoridad lo ponía en posesión, entonces ya no tenía razón de ser el interdicto puesto que ya no existía verdadera perturbación del orden público". Íd., pág. 211. En ese sentido, indicamos que la procedencia del interdicto posesorio depende de "que el demandado como autor de la perturbación ó del despojo, **hubiera procedido de su propia autoridad ó en el ejercicio de un derecho legítimo, reconocido y amparado por una providencia judicial**". (Negrillas suplidas). Íd., pág. 212. Luego, en Ramos v. Puig,

61 DPR 83 (1942), reafirmamos que "[e]l despojo que da derecho a solicitar un auto de injunction es aquel que ha sido realizado por el demandado u otra persona por orden de éste, **sin intervención judicial**". (Negrillas suplidas). Íd., pág. 85, citado en Miranda Cruz y otros v. S.L.G. Ritch, supra, pág. 968.

Invariablemente, los casos citados postulan que el requisito de perturbación indebida exige una inquietud en conflicto con el orden público. Por ello, la desposesión por una orden judicial es un factor vital para decidir sobre la procedencia de un interdicto posesorio. Compárese esta norma con lo dispuesto en el Art. 718 del Código Civil en cuanto a que "[l]a persona que se crea con acción o derecho para privar a otra de la tenencia de una cosa, siempre que el tenedor resista la entrega, debe solicitar el auxilio de la autoridad competente". Art. 718 del Código Civil, 31 LPRA sec. 7845. Evidentemente, la propia legislación civilista tutela la privación de la posesión de un bien siempre y cuando esté avalada por la autoridad judicial. Véase, Teissonnier v. Barnés, supra, pág. 211.

El criterio expuesto cuenta con amplio reconocimiento en la doctrina científica. Así, por ejemplo, el Prof. Michel J. Godreau Robles sostiene que "[s]i el demandado ha adquirido la posesión que está en controversia por medios legítimos, no se puede hablar de despojo". M. Godreau Robles, *La posesión y su protección sumaria*, 58 Rev. Jur. UPR 299, 320 (1989). Para el profesor, la perturbación indebida de la posesión "es un

requisito que se desprende del propósito mismo de la acción".

Íd. Por esto, afirma lo siguiente:

> La reiterada expresión en la jurisprudencia en el sentido de que en el interdicto posesorio no se discuten cuestiones de título debe entenderse, pues, circunscrita al título sobre el derecho más o menos permanente a poseer. **Con respecto a la forma de adquirir la posesión objeto del interdicto, siempre existe la posibilidad de probar que la misma no se adquirió vía el despojo, sino vía medios legítimos.** (Negrillas suplidas). Íd., pág. 321.

Asimismo, tratadistas como Manresa, Scaevola y Albaladejo convergen en que no toda privación de la posesión permite la acción interdictal, pues no existe perturbación indebida cuando el presunto despojador "obra en virtud de un derecho que le corresponde". J. M. Manresa y Navarro, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1972, T. IV, pág. 262. Véanse, Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1948, T. VIII, pág. 398; M. Albaladejo, *Derecho Civil*, Barcelona, Ed. Ronda Universidad, 1989, T. III, Vol. I, pág. 98. A modo ilustrativo, explica Scaevola que "si el dueño desahucia al arrendatario en uso de su derecho, es evidente que no comete acto alguno perturbativo". Scaevola, *op. cit.*, pág. 399. En estos casos, la ley supone que no existe perturbación indebida porque si el poder judicial interviene para avalar la toma de posesión del presunto despojador, entonces por definición este último no toma la justicia en sus manos. Véase, Godreau Robles, supra, pág. 321. En consecuencia, si el presunto despojador en realidad no tomó la justicia en sus manos, en efecto desaparece el fundamento del interdicto posesorio.

En cuanto al ámbito procesal, en Teissonnier v. Barnés, supra, dijimos que quien se oponga a la desposesión por

mandamiento judicial podrá acudir al mismo juez para que revoque su providencia o instar la acción ordinaria correspondiente para reclamar su derecho. Íd., pág. 211. Lo mismo expresamos en Crespo v. San Miguel, 63 DPR 973 (1944), al dictar que "si la demandada creyó tener algún derecho a continuar poseyendo la finca […] debió acudir a la corte inferior y solicitar la revocación de dicha orden o de lo contrario entablar la acción ordinaria correspondiente". Íd., págs. 975-976. Así pues, el interdicto posesorio no es el instrumento procesal adecuado ante un auto judicial de desposesión. Empero, esto no equivale a que el desposeído esté desprovisto de remedio, pues podrá instar aquellas acciones independientes que crea necesarias para ejercer sus derechos, como efectivamente hizo el señor Santiago Maldonado. Recordemos que la demanda de sentencia declaratoria que instó el recurrido está pendiente y no está ante nuestra consideración.

### C. La excepción de ineficacia del mandamiento judicial

Ahora bien, nuestra jurisprudencia devela una excepción a la norma general expuesta. En síntesis, el desposeído puede demostrar que el mandamiento judicial de desposesión carece de eficacia. Si así lo prueba, entonces procede restarle efectividad al mandamiento y, en consecuencia, tendrá lugar el interdicto posesorio a su favor.

A saber, en Preston v. Maldonado, 42 DPR 488 (1931), anulamos un mandamiento de venta judicial de una finca en una acción de cobro de dinero porque el inmueble subastado estaba en manos de una persona que nunca fue parte del pleito. Concluimos, pues, que la desposesión fue indebida, al basarse

en una orden judicial ineficaz contra el poseedor del inmueble subastado. Por otra parte, en Lloréns v. Arbona, 61 DPR 279 (1943), determinamos que el despojo sin autorización del tribunal es ilegal e ineficaz contra el poseedor despojado. Finalmente, en Rosado v. Valentín, 65 DPR 571 (1946), concedimos un interdicto posesorio a favor del desposeído en virtud de un mandamiento judicial, pues razonamos que la orden era inoponible contra aquel. Allí, nos basamos en que el promovente del remedio interdictal no fue parte de la acción reivindicatoria que motivó su desposesión, a pesar de que poseía el inmueble desde antes de instada la causa. Notablemente, en esta última decisión entendimos que no era de aplicación la norma sentada en Teissonnier v. Barnés, supra, ni en Ramos v. Puig, supra, puesto que "[e]n ninguno de ellos surge que el poseedor demostrara que el mandamiento judicial carecía de eficacia en cuanto a él. Por lo tanto, los casos sólo resuelven que **la persona desposeída en virtud de mandamiento judicial no puede obtener un interdicto para recobrar la posesión en ausencia de una demostración de la ineficacia del mandamiento**". (Negrillas suplidas). Rosado v. Valentín, supra, pág. 572.

En lo pertinente, los casos Preston v. Maldonado, supra, y Rosado v. Valentín, supra, establecen que si el desposeído estaba en posesión del bien inmueble y no formó parte de la acción que lo desposeyó, entonces tiene derecho a un remedio interdictal. Marcadamente, en Rosado v. Valentín, supra, fundamentamos esta excepción en lo que hoy día la Constitución establece: "Ninguna persona será privada de su […] propiedad sin debido proceso de ley". Art. II, Sec. 7, Const. PR, LPRA,

Tomo 1, pág. 305. Véase, <u>Rosado v. Valentín</u>, <u>supra</u>, pág. 573 ("no puede la recurrente ser desposeída sin antes habérsele oído y vencido en juicio"). Pese a lo anterior, **en ninguno de estos casos el poseedor había adquirido el inmueble sujeto a una anotación de embargo en el Registro de la Propiedad como ocurre en el caso de autos.**

Por su parte, en el ordenamiento procesal civil la excepción de ineficacia por no formar parte del pleito encuentra apoyo en la Regla 51.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, la cual versa sobre la orden de venta judicial de un bien y expresa lo siguiente:

> En todos los casos en que el tribunal ordene una venta judicial de bienes muebles o inmuebles, dicha orden tendrá la fuerza y efecto de un auto que dispone la entrega física de la posesión, por lo que deberá consignarse así en el fallo u orden para que el alguacil o la alguacila, u otro funcionario o funcionaria, proceda a poner al comprador o compradora en posesión de la propiedad vendida dentro del plazo de veinte (20) días desde la venta o la subasta, **sin perjuicio de los derechos de terceros que no hayan intervenido en el procedimiento.** (Negrillas suplidas).

No obstante, la Regla 51 de Procedimiento Civil, 32 LPRA Ap. V, **guarda silencio en cuanto a la notificación o citación de un tercero con interés en el inmueble sujeto a embargo y ejecución.** Escuetamente, se limita a fijar que una orden de venta judicial tendrá el efecto de un auto de desposesión, "sin perjuicio de los derechos de terceros que no hayan intervenido en el procedimiento". <u>Íd.</u> En atención a esto, **la excepción de ineficacia del mandamiento judicial no puede verificarse a base de un análisis automático de si un tercero afectado fue parte o no, como hace la Opinión mayoritaria.** Más bien, procede evaluar el derecho procesal aplicable según los hechos del caso,

de manera que salvaguardemos los derechos de terceros sin menoscabar la providencia judicial.

Así, por ejemplo, en Housing Investment Corp. v. Luna, 112 DPR 173, 180 (1982), ante una controversia de ejecución de hipoteca sobre un inmueble arrendado bajo la derogada Ley de Alquileres Razonables, dictamos que los arrendatarios que antecedan la hipoteca "son propiamente terceros" para efectos de la Regla 51.3 de Procedimiento Civil, 32 LPRA Ap. V, por lo cual, deberán ser notificados e incluidos como parte. En contraste, expresamos que los arrendatarios posteriores a la constitución de la hipoteca —informados por el Registro de la Propiedad de la existencia previa de la hipoteca— deben atenerse al resultado de la ejecución. Íd., págs. 179-180.

### D. Remedios procesales disponibles a un tercero con interés en un bien sujeto a embargo y ejecución

Según surge de los asientos del Registro de la Propiedad, el 8 de febrero de 2022 se inscribió una anotación de embargo sobre el bien inmueble en cuestión. Apéndice del Alegato de la parte apelada, Tribunal de Apelaciones, págs. 50-54. El señor Santiago Maldonado adquirió por compraventa dicho inmueble el 11 de mayo de 2022. Es decir, **el recurrido adquirió el inmueble sujeto a una anotación de embargo.** Este hecho, por sí solo, amerita distanciarnos de lo resuelto en Preston v. Maldonado, supra, y Rosado v. Valentín, supra, ya que, independientemente de si el señor Santiago Maldonado formó parte o no del proceso de ejecución de sentencia, la publicidad del Registro de la Propiedad de la anotación del embargo modifica los derechos y los remedios procesales del recurrido.

El embargo se define como "una interdicción jurídica en el patrimonio del deudor, decretada a petición ex parte del acreedor reclamante". Alum Torres v. Campos del Toro, 89 DPR 305, 321 (1963). El objetivo del embargo es sujetar bienes para asegurar la efectividad de la sentencia que en su día recaiga. Román v. S.L.G. Ruiz, 160 DPR 116, 221 (2003); Vargas v. González, 149 DPR 859, 865 (1999). La Regla 56.4 de Procedimiento Civil, 32 LPRA Ap. V, dicta que, en el caso de bienes inmuebles, el embargo adquiere efectividad si se anota en el Registro de la Propiedad y se notifica a la parte demandada.

Por su parte, el Título IV de la Ley Núm. 210-2015, conocida como la Ley del Registro de la Propiedad Inmobiliaria (Ley del Registro), 30 LPRA secs. 6001 *et seq.*, gobierna la forma y el efecto de las anotaciones preventivas. En lo particular, el Art. 49 de la Ley del Registro, 30 LPRA sec. 6069, sobre la enajenación o el gravamen de inmuebles anotados preventivamente, en lo relevante dispone lo siguiente:

> Los títulos en que se enajenen o graven bienes inmuebles sujetos a anotación preventiva podrán inscribirse sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación, siempre que su enajenación no esté prohibida o, estándolo, se trate de títulos de transmisión de dominio otorgados con anterioridad a la anotación de la prohibición de enajenar.

> **Si antes que el acreedor haga efectivo su crédito, el bien o derecho anotado pasa a manos de un tercer poseedor, y éste acredita su título, podrá solicitar la intervención en el pleito,** sin paralizar el curso del procedimiento. El tribunal dispondrá sobre la subrogación y en el lugar y grado del deudor, pero solo en cuanto a los efectos de la ejecución del bien o derecho anotado preventivamente. (Negrillas suplidas).

Conforme al Art. 100 de la Ley del Registro, el tercero poseedor de un bien anotado que haya acreditado su título e intervenido en el pleito "será citado para la subasta conforme exigen las Reglas de Procedimiento Civil". Art. 100 de la Ley del Registro, 30 LPRA sec. 6137. Así pues, la Ley del Registro establece un mecanismo para que un tercero poseedor que adquirió un inmueble sujeto a anotación, ejecución o subasta sea notificado del procedimiento y pueda formar parte de este, **condicionado a que haya acreditado su título y solicitado la intervención.** Véase, A. C. Gómez Pérez, *La hipoteca en el Derecho Inmobiliario Registral puertorriqueño*, 1ra ed., Bogotá, Ed. Temis, 2021, págs. 214-215.

De otro lado, la Regla 21.5 de Procedimiento Civil, 32 LPRA Ap. V, provee un remedio de intervención para los terceros que reclaman bienes sujetos a una orden de embargo o ejecución de sentencia en un pleito del cual no forman parte. Este mecanismo, aunque es de alcance divergente y podría estar sujeto a matices factuales que no consideraré, es compatible con el curso procesal de los Arts. 49 y 100 de la Ley del Registro en lo concerniente al caso de autos. Al respecto, la Regla 21.5 de Procedimiento Civil, 32 LPRA Ap. V, promulga lo siguiente:

> Siempre que un alguacil o una alguacila proceda a cumplimentar una orden de ejecución, de embargo o de cualquier otra orden contra alguna propiedad mueble o inmueble, **y dicha propiedad o cualquier parte de ella, o algún interés en ella, sea reclamada por un tercero, éste tendrá derecho a presentar una demanda de intervención.** El procedimiento de intervención relacionado con bienes muebles e inmuebles se regirá por estas reglas. (Negrillas suplidas).

La intervención permitida por esta regla no requiere que el interés en el bien guarde relación con la controversia

incoada entre las partes originales. Más bien, este mecanismo faculta a un tercero para intervenir en un pleito ajeno y reclamar algún derecho sobre un bien sujeto a ejecución, embargo o cualquier otra orden en su contra. Cabe señalar que esta intervención procede como cuestión de derecho. Regla 21.1 de Procedimiento Civil, 32 LPRA Ap. V. Véase, J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Estados Unidos, Publicaciones JTS, 2011, T. II, pág. 806. El objetivo de la intervención del tercero debe ser el levantar el embargo o detener la ejecución, a la vez que solicite al tribunal la resolución de su alegado interés sobre el bien afectado. IG Builders *et al* v. BBVAPR, 185 DPR 307, 323 (2012).

Aún más, la Regla 21.6 de Procedimiento Civil, 32 LPRA Ap. V, provee una alternativa a la parte interventora para obtener la posesión provisional de una propiedad embargada, hasta tanto se dilucide la controversia. Sobre ello, la regla dispone que la parte interventora deberá presentar una moción y, de ser declarada con lugar, deberá prestar una fianza como condición para recuperar la posesión de la propiedad.

En suma, **ni el ordenamiento registral ni el ordenamiento procesal civil requieren para completar el proceso de ejecución de sentencia que el tercero poseedor que adquirió su derecho luego de anotado un embargo sea parte**. Véase, Gómez Pérez, *op. cit.*, págs. 214-215. Por ello, el tribunal no está obligado a notificarle ni a citarle. Por el contrario, el remedio disponible a ese tercero poseedor es la intervención para reclamar lo que proceda en derecho. Una vez intervenga, el tribunal deberá notificarle las incidencias procesales

posteriores y otros acontecimientos requeridos por ley. En consecuencia, en este contexto no es suficiente para beneficiarse de la excepción de ineficacia del mandamiento judicial que el desposeído demuestre que no formó parte de la acción que lo desposeyó.

                              III

        Según lo discursado, la controversia que tenía que resolver este Tribunal era la siguiente: ¿Fue indebidamente perturbada la posesión del señor Santiago Maldonado? El recurrido arguye que en efecto fue inquietado indebidamente en su posesión por la señora Alvelo Rivera, ya que nunca formó parte del pleito que culminó en su desposesión. Plantea que se le privó de su propiedad sin el debido proceso de ley. Sin embargo, contrario a lo atisbado por la Opinión mayoritaria, no procede dictar un interdicto posesorio a favor del recurrido. A todas luces, la causa de acción del señor Santiago Maldonado no cumple con el requisito de perturbación indebida ni satisface la excepción de ineficacia del mandamiento judicial de desposesión.

        De entrada, es decisivo examinar el cumplimiento con el requisito de perturbación indebida, ya que la tutela interdictal solo protege a los poseedores que han sido inquietados indebidamente en su posesión. Art. 724 del Código Civil, 31 LPRA sec. 7862. Conforme a los hechos reseñados, el señor Santiago Maldonado fue desposeído el 21 de febrero de 2024 por orden del Tribunal de Primera Instancia y no por preferencia de la señora Alvelo Rivera. Como norma general, un interdicto posesorio no es el vehículo procesal adecuado para

obtener un remedio en contra de un mandamiento judicial de desposesión, puesto que, por definición, la desposesión por providencia judicial no equivale a una inquietud indebida. Crespo v. San Miguel, supra, pág. 975. Así pues, a menos que el foro primario haya emitido un auto de desposesión ineficaz, la desposesión del señor Santiago Maldonado no puede constituir una perturbación indebida.

Sentado lo anterior, vale escudriñar si el señor Santiago Maldonado demostró la ineficacia del mandamiento judicial de desposesión. Como expusimos, si el desposeído demuestra que la orden le es inoponible, debemos exceptuarlo y conceder el interdicto posesorio a su favor. Rosado v. Valentín, supra, pág. 572. Es cierto que el recurrido no fue parte del caso Madeline Correa Rodríguez v. Dr. Edgardo M. Colón Ledeé, Núm. KDP-2012-0472, ni participó en el proceso de ejecución de sentencia de este. No obstante, **el señor Santiago Maldonado adquirió el inmueble en cuestión sujeto a un embargo anotado en el Registro de la Propiedad.** Según el derecho detallado, la validez del proceso de ejecución de sentencia y del mandamiento de desposesión que eventualmente pueda recaer no depende de si un tercero adquirente de un bien embargado es parte o no. En realidad, si estos terceros desean hacer valer sus derechos deben intervenir en el procedimiento. Arts. 49 y 100 de la Ley del Registro, 30 LPRA secs. 6069 y 6137; Regla 21.5 de Procedimiento Civil, 32 LPRA Ap. V. De tal modo, el argumento del recurrido de que se le privó de su propiedad sin el debido proceso de ley porque nunca fue parte carece de méritos, ya que lo crucial fue que tuvo la oportunidad de formar parte por estar

notificado del embargo sobre el inmueble y optó por no ejercer su derecho de intervención. El hecho de que su escritura de compraventa fue luego eliminada del Registro de la Propiedad y que instó una demanda de sentencia declaratoria para impugnar la orden de eliminación no alteró el derecho aplicable, así como no trastornó su facultad de intervenir. Forzosamente, el señor Santiago Maldonado no logra rebatir la presunción de validez del auto de desposesión. Véase, López García v. López García, 200 DPR 50, 59 (2018).

Cabe resaltar que la alegación de ineficacia del mandamiento judicial es, por su propia naturaleza, excepcional. Exige la constatación de un defecto en el debido proceso que prive de efectividad a la providencia judicial. Tan restrictiva debe ser su aplicación que, de lo contrario, entraría en tensión con el carácter sumario del interdicto posesorio, al exigir un desfile probatorio más complejo que aquel necesario para determinar si existió una perturbación indebida de la posesión.

Proclamar el debido proceso de ley en el vacío normativo para favorecer la posesión del señor Santiago Maldonado no debió entumecer a este Tribunal. Como verificamos, las Reglas de Procedimiento Civil, la Ley del Registro de la Propiedad y nuestra jurisprudencia articulan el debido proceso particular a este caso. En definitiva, el recurrido tuvo a su alcance los remedios procesales para hacer valer sus derechos. Sin embargo, prefirió no utilizarlos.

El ejercicio de los derechos es una decisión que cada individuo tiene que tomar; en cambio, la providencia judicial no puede supeditarse a la voluntad caprichosa del

compareciente. Bajo el análisis de la mayoría, toda decisión adoptada con conocimiento del tercero interesado que, pudiendo intervenir en el proceso, opta deliberadamente por cruzarse de brazos, devendría ineficaz.

Desacertadamente, la mayoría de este Tribunal decide ignorar la doctrina centenaria respaldada por tratadistas de elevado prestigio y crear un instrumento de subterfugio que servirá para socavar autos de desposesión legítimos. Asimismo, neutraliza el principio de publicidad registral y vulnera el orden procesal en perjuicio de quienes acudieron al tribunal presumiendo su regularidad. Lo que resuelve hoy la mayoría no solo entraña una merma en la confianza en los procesos judiciales, sino que además propicia el absurdo de generar fallos interdictales en conflicto con mandamientos de desposesión cuya ineficacia no ha sido demostrada. En otras palabras, permite que, para todos los efectos prácticos, un juez anule injustificadamente el dictamen de otro magistrado.

## IV

Por los fundamentos antes expuestos, disiento respetuosamente del proceder propuesto por la mayoría de este Tribunal. Ante las circunstancias delineadas, el interdicto posesorio instado por el señor Santiago Maldonado es improcedente por no satisfacer el requisito de perturbación indebida. Por ello, habría revocado la decisión del Tribunal de Apelaciones y declarado no ha lugar la demanda del recurrido.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado