Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| WM CAPITAL PARTNERS 53, LLC<br><br>Recurrida<br><br>v.<br><br>JUAN RAMÓN ZALDUONDO VIERA, su esposa MAGDALENA EMILIA MACHICOTE RAMERY, y LA SOCIEDAD DE BIENES GANANCIALES POR ELLOS COMPUESTA; JUAZA, INC.; JUAZAL, SE; LOTESIETE, INC.; LA GLORIETA, INC.;<br><br>Demandada<br><br>CONSEJO DE TITULARES DEL CONDOMINIO HARBOUR POINT<br><br>Interventor Peticionario | TA2026AP00190 | APELACIÓN acogida como *CERTIORARI* Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.:<br>K CD2009-4248<br><br>Sobre:<br>Ejecución de Hipoteca y Cobro de Dinero |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 17 de marzo de 2026.

El 21 de febrero del año en curso, el Consejo de Titulares del Condominio Harbour Point (parte peticionaria o Consejo de Titulares) presentó ante este Tribunal de Apelación un *Recurso de Apelación*. Mediante el mismo, nos pide la revocación de *Resolución* dictada en la causa de epígrafe el 7 de julio de 2025, notificada el 23 de enero de 2026. Por virtud del aludido dictamen, el Tribunal de Primera Instancia, Sala Superior de San Juan denegó la solicitud que la peticionaria sometió para que se le autorizara a intervenir en el pleito.

Examinado el expediente, en virtud de la normativa que más adelante consignaremos, procedemos a resolver.

-I-

El caso de autos inició con la presentación de una demanda en cobro de dinero y ejecución de hipoteca. En lo concerniente a la controversia ante nos, es importante saber que, tras los trámites de rigor, el 4 de agosto de 2015, el TPI dictó *Sentencia Parcial* en el pleito. Igual de transcendental es conocer que, mediante *Moción de Sustitución de Parte Demandante y Asumiendo Representación Legal* del 20 de octubre de 2015, WM Capital Partners 53, LLC (WM Capital) compareció al caso en el lugar de la parte demandante.[1] También debemos notar que, habiéndose enmendado a su solicitud la mencionada sentencia, peticionó la ejecución de la sentencia y el que se ordenara expedir la orden y mandamiento de ejecución de sentencia; concediéndose eventualmente su petitorio.[2]

Así las cosas, el 23 de febrero de 2024, WM Capital presentó *Moción Para Que Se Nombre Un Síndico.* Allí, primeramente, informó que alguna de las unidades residenciales que garantizaban las facilidades de crédito objeto del litigio no pudieron ejecutarse y venderse en pública subasta. Explicó que la razón para ello era que "a pesar de ser hipotecas inscritas, está pendiente de calificación desde el 2018 en el Registro de la Propiedad una escritura, mediante la cual se postergan las hipotecas de $2,000,000.00; $800,000.00; $7,480,000.00 y $2,300,000.00, en beneficio de la hipoteca por $4,912,000.00, de manera que esta última quede con rango preferente." Por tanto, y hasta tanto el Registro de la Propiedad no inscribiera la referida escritura de postergación, WM Capital manifestó estar impedido de

---

[1] Ello, por haber adquirido las acreencias en controversia.

[2] Véase *Solicitud de Enmienda a la Sentencia Nunc Pro Tunc* sometida por WM Capital el 15 de noviembre de 2016 (Anejo 16 del Apéndice); *Orden* del 6 de diciembre de 2016 (Anejo 17 del Apéndice); *Solicitud de Orden de Ejecución Parcial de Sentencia* presentada por WM Capital el 27 de enero de 2017, así como su *Nueva Solicitud de Orden y Mandamiento Para Ejecución Parcial de Sentencia* del 7 de diciembre de 2018 (Anejos 18 y 19 del Apéndice); y *Orden* del 8 de enero de 2019 (Anejo 20 del Apéndice).

ejecutar la hipoteca de $4,912,000.00 subordinada y, consecuentemente, la finca matriz #19413 donde ubica el condominio Harbour Point y los apartamentos no individualizados.

En vista de ello, y ante el hecho de que existía una sentencia final y firme, WM Capital solicitó que, al amparo del Artículo 70 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico (Ley 210-2015)[3], se nombrara a Las Brisas Property Management como síndico para que administrara las propiedades en cuestión. Pidió, además, que se dictara la correspondiente orden para que el síndico pudiera realizar las siguientes gestiones:

1. Llevar a cabo en forma efectiva y eficiente los servicios necesarios para mantener las propiedades en condiciones aceptables, incluyendo, sin limitación, la contratación de empleados, trabajadores, agentes y personal profesional y administrativo; y efectuar aquellos contratos, pagos, adelanto de fondos y desembolsos necesarios y propios para la prestación de los servicios antes mencionados.

2. Pagar los seguros vencidos y futuros necesarios de las propiedades relacionadas.

3. Administrar y arrendar las unidades para poder generar ingresos que puedan cubrir los gastos anteriores.

El 10 de abril de 2024, notificada el 11, el TPI dictó *Resolución* en la que declaró con lugar la solicitud para el nombramiento de un síndico, nombrándose a Las Brisas Property Management como tal. En consecuencia, dictaminó que la entidad delegada tendría la facultad de administrar las propiedades hipotecarias según pactado en la hipoteca y en virtud del Artículo 70 de la Ley 210-2015. Específicamente, reconoció que el síndico nombrado podría realizar las gestiones enumeradas en el párrafo anterior.

El 5 de mayo de 2025, el Consejo de Titulares compareció ante el TPI mediante *Moción Asumiendo Representación Legal y Solicitud de Intervención* en la que indicó que los apartamentos en cuestión no requerían los servicios

---

[3] 30 LPRA Sec. 6097.

de un síndico para que los administrara ya que estos estaban bien mantenidos. En la alternativa, reclamó que, de ser necesario tal nombramiento, debió ser consultado y habérsele brindado oportunidad de participar en su selección y nombramiento. Así, adujo que como organismo rector del complejo de viviendas en donde ubican los apartamentos y por tener interés propietario sobre estos- pues sobre estos pesa una hipoteca legal que garantiza el pago de la cuota de mantenimiento que tiene derecho a cobrar- era una parte indispensable con derecho a intervenir en el caso y así solicitó se le permitiera hacer.

WM Capital se opuso a la solicitud de intervención de la peticionaria. A tales efectos, mediante escrito sometido el 14 de mayo de 2025, sostuvo que la solicitud de intervención de la peticionaria era inoportuna y de axiomática incuria, pues fue presentada más de un año después de que advino en conocimiento del nombramiento del síndico. Por otro lado, basándose en la jurisprudencia allí citada, afirmó que la moción de intervención del Consejo de Titulares era inadecuada en la etapa procesal del caso.

Específicamente, sobre esto último arguyó que la intervención post sentencia solamente procede cuando es la manera más eficaz de proteger los derechos de la persona interventora y negó que ese fue el caso de la peticionaria. Explicó que la sentencia dictada en el caso, así como la resolución en la que se nombró un síndico, en nada perjudicaba los intereses del Consejo de Titulares. Esto, pues como propiamente este acepta en su escrito, "las cuotas de mantenimiento constituyen hipoteca legal sobre las propiedades objeto de ejecución.". Asimismo, aseveró que una vez WM Capital advenga titular de los apartamentos en el proceso de venta en pública subasta, si no existe un mejor postor, entonces se dilucidará el tema de las cuotas de mantenimiento. Por estas y demás razones, WM Capital sostuvo que no procedía la intervención de la parte peticionaria en el pleito.

Atendidas ambas mociones, el 19 de mayo de 2025, el TPI dictó *Resolución* mediante la cual declaró No Ha Lugar la intervención solicitada por la peticionaria. Al así hacer, expresó que "[la resolución para administrar los apartamentos no incide con la administración del condominio. Inconforme con esta decisión, la parte peticionaria presentó la correspondiente *Moción de Reconsideración*. Allí sostuvo que la manera en que la orden que nombra al síndico está redactada y los poderes que esta concede al síndico- y por consiguiente a WM Capital-tendrá un efecto negativo en sus intereses. Esto, pues la misma concede autorización para entrar a los apartamentos, hacerle reparaciones y mejoras y además alquilarlos sin ningún tipo de restricción, término o tiempo. Inclusive, expuso que mediante la decisión emitida el tribunal se excedió de las disposiciones del Artículo 70 de la Ley 210-2015, pues esta solamente busca evitar el deterioro de la unidad hipotecada y no permitir el alquiler de la misma. Así, sostuvo que permitirle a WM hacerse cargo de los gastos de estas unidades "constituiría una duplicidad de funciones y un gasto innecesario ya que las unidades en cuestión están siendo adecuadamente mantenidas por la administración del condominio."

Habiéndose presentado por WM Capital una oposición a la reconsideración solicitada, el 7 de julio de 2025, notificada el 23 de enero de 2026, el TPI se sostuvo en su determinación inicial negándose a reconsiderar. En desacuerdo aun con esto, la parte peticionaria instó el recurso de epígrafe y señaló la comisión del siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE INTERVENCIÓN DEL CONSEJO DE TITULARES DEL CONDOMINIO HARBOUR POINT, SIN EXPOSICIÓN ALGUNA DE FUNDAMENTOS EN HECHO O DERECHO, VULNERANDO ASÍ LOS DERECHO[S] DE ESTA PARTE Y SU DEBIDO PROCESO DE LEY

Atendido el mismo, el 24 de febrero de este año emitimos *Resolución* mediante la cual acogimos el recurso de apelación como uno de *certiorari*

por tratarse de una resolución interlocutoria.[4] En esta, también establecimos que los recurridos tenían el plazo dispuesto en la Regla 37 del Reglamento del Tribunal de Apelaciones, según enmendado, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, 215 DPR __ (2025), para hacerlo. En cumplimiento con ello, el 4 de marzo de 2026, WM Capital sometió su *Memorando en Oposición a la Expedición del Auto de Certiorari*.

Siendo así, con el beneficio de la comparecencia de ambas partes y del expediente ante nos, procedemos a disponer del presente asunto, no sin antes delimitar el marco jurídico aplicable.

-II-

*A.*

El vehículo procesal de *certiorari* le permite a un tribunal de mayor jerarquía revisar las órdenes o resoluciones interlocutorias emitidas por un tribunal inferior. *Allio v. Santiago Chardón y otros*, 2026 TSPR 14, 217 DPR ___; y *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 195 (2023), al mencionar a *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021). La característica distintiva del recurso de *certiorari* descansa en la discreción encomendada al Tribunal de Apelaciones para autorizar su expedición y adjudicar en sus méritos. *Íd.* De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016), al mencionar a *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.* Por el contrario, la discreción del tribunal revisor es una forma de razonabilidad aplicada al discernimiento

---

[4] En adición, es importante recordar que el *certiorari* es el vehículo adecuado para auscultar la revisión judicial de una determinación interlocutoria dictada post sentencia. *Banco Popular de Puerto Rico v. Gomez Ayalón*, 213 DPR 314 (2023).

judicial para así llegar a una conclusión justiciera. *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición del auto de *certiorari* se encuentran en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *Rivera et al. v. Arcos Dorados et al., supra*, 7itua. 207-208. Sobre ello, la referida regla dispone, en lo pertinente, como sigue:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositiva. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier 7ituaciónn en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Como se aprecia, la antedicha regla no contempla los dictámenes posteriores a la sentencia, por lo que, al determinar si procede la expedición de un auto de *certiorari*, el Tribunal de Apelaciones viene obligado a acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025). *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012). Ello por cuanto limitar la revisión de dictámenes post sentencia a las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra*, tales determinaciones quedarían sin posibilidad alguna de revisión apelativa. *BPPR v. SLG Gomez-López, supra*. En adición, el examen para determinar si procede expedir un auto de *certiorari* no se da en el vacío o en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 824 (2023).

A esos efectos, la Regla 40 de nuestro Reglamento, *supra*, dispone que al determinar la expedición de un auto de *certiorari* debemos considerar los siguientes criterios:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto de la orden de mostrar causa evita un fracaso de la justicia.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio, como tampoco constituye un listado exhaustivo. *García v. Padró*, 165 DPR 324, 327 (2005). De otra parte, estos factores pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

*B.*

La Regla 21.1 de Procedimiento Civil, 32 LPRA Ap. V R. 21.1, establece que, mediante oportuna solicitud, cualquier persona tendrá derecho a intervenir en un pleito: (a) cuando por ley o por las propias reglas se le confiera un derecho incondicional a intervenir, o (b) cuando la persona solicitante reclame algún derecho o interés en la propiedad o asunto objeto de litigio que pueda, de hecho, quedar afectado con la disposición final del pleito.

El vehículo procesal de la intervención es uno de utilidad y uso común en los tribunales, más no es fuente de derechos sustantivos ni

establece una causa de acción. *DACO v. LUMA Energy, LLC*, 2025 TSPR 126, 216 DPR ___, al citar a *IG Builders et al. v. BBVAPR*, 185 DPR 307, 320 (2012). A través del discutido mecanismo, se permite que un tercero comparezca en una acción judicial previamente instada y presente una reclamación o una defensa, convirtiéndose en parte para esos fines. *Id.* Al evaluar una solicitud de intervención debe aplicarse un análisis pragmático, considerándose si existe un interés que amerite protección y si ese interés se vería afectado, como cuestión práctica, por la ausencia del interventor del caso. *Id.* y casos allí citados. Si bien las disposiciones atenientes a la intervención deben interpretarse liberalmente para permitir que intervenga una tercera persona que tenga múltiples intereses en un litigio, no significa refrendar su uso irrestricto. *IG Builders et al. v. BBVAPR*, supra, a la pág. 321.

En su aspecto práctico, el proceso de intervención comienza con la presentación de una solicitud al tribunal mediante la cual la parte interesada debe exponer aquellos fundamentos que justifican su injerencia en el procedimiento. La solicitud de intervención debe estar acompañada con la alegación correspondiente a la reclamación o la defensa que se pretende proseguir en el caso. *Id.*, pág. 322. La misma, además, debe ser oportuna. *Compañía de Fianzas v. Tribunal Superior*, 100 DPR 169, 170 (1971). Ordinariamente, una solicitud de intervención post-sentencia se percibe con recelo, pues puede perjudicar los intereses de las partes originales o interferir sustancialmente con los procesos ordinarios en el tribunal. *Id.*

Expuesta la normativa jurídica aplicable, procedemos a disponer del presente recurso.

-III-

Como arriba señalamos, ciertamente, la controversia de autos es revisable mediante el auto discrecional del *certiorari* por tratarse no solo de la revisión judicial de una determinación interlocutoria, sino porque esta

fue dictada post sentencia. A través de su recurso, el Consejo de Titulares arguye que la intervención solicitada procedía en derecho. En síntesis, y a tales efectos, expone que el Artículo 61 de la Ley de Condominios le reconoce un crédito legal relacionado con la obligación de los titulares de aportar a los gastos comunes del condominio.[5] También, señala que la morosidad en cuotas comunes produce efectos sistémicos que afectan a toda la comunidad, pues el impago de estas en ciertas unidades "puede trasladar cargas a los demás titulares, provocar derramas, erosionar reservas, comprometer seguros y mantenimiento, y generar un deterioro operacional que impacta el valor del inmueble y la habilidad del régimen." Sostiene que ello demuestra porqué tiene un interés real e inmediato en decisiones judiciales que alteren, aunque sea indirectamente, la operación de unidades en ejecución y su capacidad de generar ingresos o cumplir con obligaciones comunes.

En adición, la parte peticionaria plantea que, más allá de dicho interés crediticio, tiene un interés jurídico directo sobre el caso por mandato expreso de la Ley de Condominios, pues entre las facultades que dicha ley le reconoce, se encuentra "la administración general, la contratación de servicios, la aprobación presupuestaria, la toma de decisiones operacionales sobre asuntos de interés general, la preservación del inmueble y, en general, la gobernanza del régimen.". Así pues, específicamente argumenta que las facultades que el TPI le reconoció al síndico nombrado producen varias consecuencias prácticas que activan su derecho a intervenir en el pleito.

---

[5] El citado artículo establece que "[e]l crédito contra cualquier titular por la obligación del titular de un apartamento por su parte proporcional de los gastos comunes que hace referencia el Artículo 59 de esta Ley, tendrá preferencia sobre cualquier otro crédito de cualquier naturaleza excepto los siguientes: a) Los créditos a favor del Gobierno de Puerto Rico y la correspondiente municipalidad por el importe de las cinco (5) últimas anualidades y la corriente no pagada, vencidas y no satisfechas de las contribuciones que graviten sobre el apartamento. b) Por la prima del seguro de dos (2) años, del apartamento o del inmueble total, en su caso, y si fuese el seguro mutuo por los dos (2) últimos dividendos que se hubiesen repartido. c) Los créditos hipotecarios inscritos en el registro de la propiedad." 31 LPRA Sec. 1923f.

En primer lugar, expone que, "[a]un cuando el síndico se enfoque en unidades específicas, los servicios de mantenimiento, seguridad, manejo de desperdicios, uso de estacionamientos, facilidades y acceso a áreas comunes se insertan en una infraestructura y reglamentación interna del condominio". Ante este reclamo, sostiene que un tercero designado judicialmente, operando sin integración formal del Consejo de Titulares al proceso, crea un riesgo real de conflictos operaciones, decisiones contradictorias y costos no previstas que recaen sobre el régimen. Segundo, afirma que la decisión de "pagar seguros vencidos y futuros necesarios" afecta el perfil de riesgo del condominio, su cumplimiento y su exposición a reclamaciones, quedando el Consejo de Titulares expuesto a consecuencias patrimoniales y regulatorias derivadas de actos en los que no tuvo relación.

En adición, y en apoyo a su reclamo para la intervención, la parte peticionaria plantea que la facultad de administrar y arrendar las unidades en controversia reconocida al síndico nombrado cambia la ocupación, incrementa el uso de elementos comunes, afecta costos operacionales, puede activar disposiciones del reglamento del condominio, y repercute en el recaudo de cuotas, derramas y gastos comunes. A su vez, añade que la sindicatura establecida crea un problema jurídico adicional, pues se impone un administrador operativo paralelo en un régimen donde la ley ya identifica al órgano administrador y delimita sus poderes.

Por último, el Consejo de Titulares niega que su petición sea tardía pues lo que pretende es asegurar que "el esquema de administración impuesto mediante sindicatura, que tiene efectos inmediatos sobre el condominio, se ejecute de manera compatible con la Ley de Condominios, sin menoscabar las funciones estatutarias del Consejo de Titulares ni afectar indebidamente su interés patrimonial por cuotas comunes."

WM Capital por su parte, basándose en los hechos fácticos relevantes que expone, plantea que la intervención de la parte peticionaria a causa del nombramiento del síndico fue tardía, pues acudió a solicitarla más de un año después de conocer sobre el mismo. Igualmente reclama que la petición de intervención fue una incompleta, pues no fue acompañada de la correspondiente demanda de intervención.

De otra parte, expone que en su petición de intervención el Consejo de Titulares no estableció su legitimación activa para intervenir en la etapa post-sentencia y niega que la tenga. También rechaza que el Consejo de Titulares sea parte indispensable, tal cual argumenta ya que su situación incumple con los requisitos de la Regla 16.1 de Procedimiento Civil. Específicamente, indica que su interés no es uno real e inmediato y clasifica tal reclamo como uno frívolo. Finalmente, manifiesta que el nombramiento del síndico no incide en el rol del Consejo de Titulares, ni lacera sus intereses y derechos según la Ley de Condominios. En contrario, arguye que una vez las propiedades sean ejecutadas, habrá un nuevo titular que será responsable por las cuotas de mantenimiento.

Hemos evaluado los argumentos del Consejo de Titulares, así como los de WM Capital. Tras un análisis concienzudo y sosegado de los asuntos planteados, así como del expediente, no encontramos presente ninguno de los criterios establecidos por la Regla 40 de nuestro Reglamento para expedir el auto discrecional de *certiorari*. Nada de lo argüido por la parte peticionaria nos convence de que, en su determinación, el TPI haya actuado con prejuicio o parcialidad, ni que incurriera en un craso abuso de discreción. Tampoco nos parece que se equivocara en la interpretación o aplicación de cualquier norma jurídica procesal o sustantiva por lo que se justifique nuestra intervención.[6]

---

[6] Advertimos que más allá de presentar alegaciones generales para justificar su reclamo de intervención, el Consejo de Titulares no señala de forma específica cómo la administración

-IV-

Por todo lo antes consignado, denegamos expedir el auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

-IV-

---

de parte del síndico de algunos apartamentos interfiere directamente con las funciones delegadas por ley al Consejo de Titulares para la administración del Condominio.