Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| RENIE ANGELITE TRAVERZO GONZÁLEZ<br><br>Parte Apelada<br><br>v.<br><br>FELCON AUTOMOTIVE, INC.<br><br>Parte Apelante | TA2026AP00230 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2024CV01410<br><br>Sobre: Despido Injustificado |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

## SENTENCIA

En San Juan, Puerto Rico, a 27 de abril de 2026.

Comparece ante nos, Felcon Automotive, Inc. (Felcon o apelante) mediante *recurso de apelación* y solicita que revisemos la *Sentencia* emitida el 17 de febrero de 2026, y notificada el 19 de febrero de 2026, por el Tribunal de Primera Instancia (TPI), Sala Superior de Mayagüez.[1] Mediante el referido dictamen, el foro primario declaró *ha lugar* la *Querella* presentada por la Sra. Renie Angelite Traverzo González (señora Traverzo González), determinando que ésta fue despedida injustificadamente y, por consiguiente, debía recibir el beneficio de la mesada, conforme lo establecido en la Ley Núm. 80-1976, *infra.*

El recurso de Felcon Automotive, Inc., se centra en la impugnación de la apreciación de la prueba oral vertida durante el juicio. Este Tribunal dictó *Resolución* el 13 de marzo de 2026, en la cual denegamos la utilización de los audios en Pen Drives para impugnar la apreciación de la prueba y ordenamos presentar una transcripción de la prueba oral conforme a la Regla 76 de nuestro

---

[1] *Recurso de Apelación*, SUMAC-TA del recurso TA2026AP00230, Entrada 1.

Reglamento. Igualmente apercibimos de los efectos ante el incumplimiento.

Examinado el recurso y ante el incumplimiento de la parte apelante, confirmamos la *Sentencia* apelada.

**I.**

El 19 de agosto de 2024, la señora Traverzo González radicó ante el TPI una *Querella* sobre despido injustificado en contra de Felcon, al amparo del procedimiento sumario de reclamaciones laborales que establece la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, *Ley de Procedimiento Sumario de Reclamaciones Laborales* (Ley Núm. 2-1961).[2] De conformidad con las alegaciones, la señora Traverzo González comenzó a laborar como Ejecutiva de Ventas para dicho patrono allá para febrero de 2016. Reseñó que, el 11 de junio de 2024, se le convocó a una reunión a la cual también asistieron el Sr. Orlando Feliciano, Gerente General de Mayagüez Ford, y la Sra. Normil Acosta, Directora de Recursos Humanos. La señora Traverzo González indicó que en la referida reunión se le informó que la compañía había tomado la decisión de despedirle, exponiendo como causa para ello que esta había adquirido un vehículo usado a través de TMC Distributor, el cual había sido previamente adquirido por Mayagüez Ford en una transacción como *trade-in*. Añadió que para justificar su despido se alegó además que ésta realizó la compra de un vehículo del *dealer* para su beneficio y obtener ganancias.

No obstante, sostuvo que la decisión se tomó sin haber realizado una investigación ni permitirle ser oída. Así, adujo que el vehículo en cuestión había sido adquirido para uno de sus hijos, pero luego de arreglar e intentar reparar desperfectos, dispuso del mismo por medio de una plataforma en línea. Añadió que, previo a

---

[2] Véase, expediente electrónico del caso MZ2024CV01410 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada 1, *Demanda.*

la compra del vehículo, solicitó información y autorización de la compraventa a parte de la gerencia de Felcon y aclaró que la misma no se efectuó a través de su patrono, sino de un tercero. Por último, destacó que antes de ser despedida nunca se le apercibió de falta alguna, así como tampoco se le entregó amonestación por la alegada infracción, pues siempre se destacó como una empleada responsable y comprometida.

En virtud de lo anterior, la señora Traverzo González expresamente solicitó la concesión de la mesada que provee la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, *Ley de Indemnización por Despido sin Justa Causa,* (Ley Núm. 80-1976)[3], estimada en la cantidad de cincuenta y cinco mil setecientos veintiocho dólares con cinco centavos ($55,728.05).

El 16 de septiembre de 2024, Felcon presentó su *Contestación a la Querella[4]*, en la que negó la mayoría de las alegaciones. Como defensas afirmativas, planteó que el despido de la señora Traverzo González estuvo justificado conforme a las disposiciones de la Ley Núm. 80-1976, *supra*, y su jurisprudencia interpretativa. También alegó afirmativamente que la señora Traverzo González violó la Política sobre Conflicto de Intereses de la compañía y que todas las acciones tomadas estuvieron enmarcadas dentro del legítimo interés de asegurar el buen y normal funcionamiento de la empresa y no estaban motivadas por ánimo ilegal alguno. A esos fines, sostuvo que la señora Traverzo González utilizó los contactos e información de la empresa para comprar una unidad que fue parte de su inventario y luego la vendió para lucrarse personalmente de la venta. Razonó que dichas acciones no podían ser toleradas por la compañía ni podían asumir el riesgo de que estas volvieran a ocurrir, por lo que se vio en la necesidad de terminar de su empleo a la querellante.

---

[3] 29 LPRA sec. 185(a) *et seq.*
[4] Véase, expediente electrónico del caso MZ2024CV01410 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC)*,* Entrada 4, *Contestación a la querella.*

Luego de varias incidencias procesales innecesarias pormenorizar, el 30 de abril de 2025, Felcon instó una *Solicitud de Sentencia Sumaria*[5] mediante la cual sostuvo que la causa de acción instada en su contra debía ser desestimada con perjuicio. Por medio de esta, Felcon expuso que no existía controversia sobre las razones que motivaron el despido de la señora Traverzo González, pues esta reconoció que entabló negociaciones con TMC Distributor dirigidas a adquirir un vehículo que, en ese momento, aún formaba parte del inventario de Mayagüez Ford, y que, posteriormente, lo revendió obteniendo una ganancia personal. Reiteró que el despido no fue producto del arbitrio o capricho del patrono, sino que respondió al interés fundamental de hacer velar sus normas y reglamentos, las cuales eran razonables y estaban encaminadas a lograr sus objetivos corporativos.

Por su parte, el 11 de junio de 2025, la señora Traverzo González presentó su *Moción en Oposición a Solicitud de Sentencia Sumaria.*[6] En síntesis, señaló que existía controversia en cuanto a si Felcon derrotó la presunción de que el despido fue injustificado y si procedía el despido como sanción a la alegada primera infracción a la política de la compañía. Puntualizó que el comportamiento que se le imputó no afectó a la empresa ni a su buen funcionamiento y que la razón para su despido fue una desproporcional, caprichosa y arbitraria que no cumplió con los requisitos de ley y jurisprudenciales para un despido justificado. Asimismo, identificó diversos hechos en controversia que impedían dictar sentencia sumaria, sustentados con prueba documental, a base de los cuales solicitó que se declarara no ha lugar la solicitud de sentencia sumaria presentada por Felcon, y que se le permitiera tener su día en corte.

---

[5] *Íd.*, Entrada 35, *Solicitud de Sentencia Sumaria.*
[6] *Íd.*, Entrada 44, *Moción en Oposición a Solicitud de Sentencia Sumaria.*

Posteriormente, el 16 de julio de 2025, Felcon presentó una *Réplica a Oposición a Solicitud de Sentencia Sumaria.*[7] En esta, arguyó que el escrito presentado por la señora Traverzo González no cumplió con la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V., toda vez que no presentó prueba admisible capaz de crear una controversia sustancial sobre los hechos esenciales. Además, sostuvo que la señora Traverzo González se limitó a descansar en meras alegaciones y conjeturas sin fundamento alguno que las sustentara y que, aun tomando como cierta la versión de los hechos presentada por esta, resultaba forzoso concluir que se había configurado una violación a su política interna, por lo que el despido fue uno justificado.

Sometido el asunto y evaluados los escritos de las partes, el 11 de septiembre de 2025, el foro primario emitió una *Resolución*[8] mediante la cual determinó que existían controversias genuinas sobre hechos materiales que impedían la disposición del pleito por la vía sumaria. Por lo que, declaró *no ha lugar* a la solicitud de sentencia sumaria instada por Felcon y, en su consecuencia, ordenó la continuación de los procedimientos.

Así las cosas, el juicio en su fondo se llevó a cabo los días 20, 21 y 24 de noviembre de 2025. La señora Traverzo González presentó como testigos al Sr. José Feliciano Prieto, Presidente de Felcon Automotive, Inc. y al Sr. Christian Sojo, mientras que Felcon contó con la presentación de prueba testifical, a través del testimonio del Sr. Miguel Rodríguez Rojas, Supervisor de Autos Usados de Mayagüez Ford, el Sr. Orlando Feliciano Concepción, Gerente General de Mayagüez Ford, y la Sra. Normil Acosta Ortiz, Directora de Recursos Humanos.

---

[7] *Íd.*, Entrada 46, *Réplica a Oposición a Solicitud de Sentencia Sumaria.*
[8] *Íd.*, Entrada 53, *Resolución.*

Examinada la prueba desfilada ante sí, el 17 de febrero de 2026, el foro primario pronunció la *Sentencia*. Mediante su dictamen, el TPI concluyó que procedía el reclamo por despido injustificado instado por la señora Traverzo González. Razonó que, conforme a la prueba testifical desfilada, y contrario a la teoría presentada por Felcon, el vehículo objeto de controversia al momento de ser adquirido por la señora Traverzo González pertenecía a TMC Distributor. Especificó que, le mereció credibilidad el testimonio de la señora Traverzo González respecto a que esta no adquirió el vehículo con el propósito de revenderlo y obtener ganancias, sino que lo adquirió para su hijo. Puntualizó además que el testimonio de los principales empleados de Mayagüez Ford reveló que el concesionario continuó operando con normalidad, que no se produjo daño económico alguno y que tampoco se afectaron los intereses legítimos de la compañía, ni su buen y normal funcionamiento. Determinó también que la política interna sobre Conflicto de Intereses o Potenciales Conflictos de Intereses, contenida en el Manual de Empleados, no era clara, ni específica en cuanto a qué tipo de conductas, acciones u omisiones constituían conflicto de interés, por lo que la señora Traverzo González no conocía ni tenía forma razonable de conocer que su conducta estaba prohibida y que la sanción conllevara su despido. En virtud de lo anterior, determinó que el despido fue injustificado y, en consecuencia, ordenó a Felcon a pagar la cantidad de cincuenta y siete mil setecientos noventa y siete dólares con treinta y seis centavos ($57,797.36) por concepto de mesada y el pago de honorarios de abogado.

En desacuerdo, el 3 de marzo de 2026, Felcon acudió ante este foro revisor mediante *recurso de apelación* y señaló que el foro primario cometió los siguientes errores:

Primer error: Erró el TPI al declarar con lugar la reclamación de despido injustificado al determinar

como hechos bases para su decisión que la querellante no participó en el negocio como ejecutiva de cuenta; el vehículo había sido vendido a un tercero no era de la flota; y un tercero es quién se lo vende a ella.

Segundo error: Erró el TPI al declarar con lugar la reclamación de despido injustificado concluyendo como base para su decisión que la Sra. Traverzo no tuvo la intención de adquirir el vehículo con el propósito de revenderlo y obtener ganancia sino lo adquirió para su hijo.

Tercer error: Erró el TPI al declarar con lugar la reclamación de despido injustificado al determinar que al momento de realizar la transacción con el Sr. Carrazo, la querellante no vinculó a Mayagüez Ford, ni utilizó el nombre, logo o distintivo del concesionario.

Cuarto error: Erró el TPI al no concluir, basado en la totalidad de la prueba, que el despido de la Sra. Traverzo está justificado debido a que sus actuaciones implicaron una violación a los deberes básicos impuestos a todo trabajador y que condujeron a un conflicto de interés con sus labores y posición en Felcon.

El 13 de marzo de 2026, la señora Traverzo González compareció ante este foro intermedio mediante escrito intitulado *Oposición a Apelación.*

## II.

### A.

La Ley Núm. 80 de 30 de mayo de 1976, conocida también como la *Ley de Despido Injustificado,* según enmendada (Ley Núm 80-1976”)[9], fue creada con el fin primordial de proteger, de manera más efectiva, el derecho del obrero puertorriqueño a la tenencia de su empleo. A su vez, procura desalentar la práctica de despedir a los empleados de forma injustificada y otorga a los trabajadores remedios justos y consustanciales con los daños causados por un despido injustificado.[10]

En virtud de lo anterior, todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, donde trabaja mediante remuneración de clase alguna, contratado sin tiempo determinado,

---

[9] 29 LPRA sec. 185a *et seq.*
[10] Véase, Exposición de Motivos de la Ley Núm. 80-1976, *supra.*; *SLG Zapata-Rivera v. JF Montalvo,* 189 DPR 414, 424 (2013).

y que fuere despedido sin justa causa, tendrá derecho a recibir de su patrono, en adición al sueldo que hubiere devengado, el salario correspondiente a un mes por concepto de indemnización, conocida ésta como la indemnización básica, y "una indemnización progresiva adicional equivalente a una semana por cada año de servicio".[11] En consecuencia, todo despido que no esté basado en justa causa será considerado injustificado, y se proveerá al afectado el remedio exclusivo de la mesada.[12]

No obstante, es preciso señalar que el ordenamiento jurídico en Puerto Rico no prohíbe de forma absoluta los despidos, sino que impone el requisito de justa causa para ello.[13] A tales efectos, se ha definido la justa causa como aquella que responde al buen y normal funcionamiento de la empresa, que no está motivada por razones legalmente prohibidas y que no es producto del mero capricho o arbitrio del patrono.[14]  Así, nuestro ordenamiento jurídico reconoce que pueden surgir circunstancias en la operación y manejo de un negocio que ameriten despedir empleados por justa causa.

El Artículo 2 de la Ley Núm. 80-1976, *supra*, establece, en lo atinente, que:

> **Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono**. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
>
> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente.  Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

---

[11] Véase, Exposición de Motivos de la Ley Núm. 80-1976, *supra*; *Rivera Figueroa v. The Fuller Bush Co.*, 180 DPR 894, 906 (2011); *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 375 (2001).
[12] *SLG Zapata* v. *J.F Montalvo*, supra, pág. 424; *Díaz* v. *Wyndham Hotel Corp.*, supra, pág. 378.
[13] *Rivera Figueroa v. The Fuller Bush Co.*, supra, pág. 904; *Santiago v. Kodak Caribbean, Ltd.*, 129 DPR 763, 775 (1992).
[14] *Srio. del Trabajo v. GP Inds., Inc.,* 153 DPR 223, 244 (2001); *Srio. del Trabajo* v. *ITT*, 108 DPR 536, 542 (1979).

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.

[...][15]

Cabe destacar que, "la enumeración de escenarios que se consideran justa causa contenida en la Ley Núm. 80 no es taxativa".[16] Por consiguiente, la Ley Núm. 80-1976, *supra,* no puede ser considerada un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una.[17]

En ese sentido, los primeros tres supuestos de justa causa para el despido responden a conductas atribuibles al empleado, mientras que los restantes obedecen a circunstancias inherentes a la operación del patrono.[18] No obstante, en todos los casos, se considerará justificado aquel despido cuya motivación esté vinculada al adecuado y normal funcionamiento del negocio, y no a un acto caprichoso o arbitrario.[19]

Por otro lado, nuestro más Alto Foro ha reconocido que, si bien se desalienta el despido como sanción ante una primera falta,

---

[15] 29 LPRA sec. 185b (Énfasis nuestro).

[16] *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 930 (2015).

[17] *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 773 (2022), citando a *Srio. del Trabajo v. GP Inds., Inc.,* supra, pág. 243.

[18] *Romero v. Cabrer Roig,* 191 DPR 643, 651-652 (2014); *Reyes Sánchez v. Eaton Electrical,* 189 DPR 586, 597 (2013); *Whittenburg v. Col. Ntra. Sra. Del Carmen,* 182 DPR 937, 950 (2011); *Díaz v. Wyndham Hotel Corp.,* supra, pág. 376.

[19] *Díaz v. Wyndham Hotel Corp.,* supra, págs. 376-377; *Srio. del Trabajo v. GP Inds., Inc.,* supra, pág. 244.

se permite tal medida si se trata de una infracción cuya naturaleza, seriedad o gravedad constituye un riesgo a la paz laboral o el buen y normal funcionamiento del negocio. En tales circunstancias, el despido como sanción en una primera ocasión podría constituir justa causa.[20]

Acorde con lo anterior, los patronos pueden aprobar reglamentos internos y establecer las normas de conducta en el lugar de trabajo que estimen necesarias, y los empleados estarán sujetas a ellas, siempre que estas cumplan con un criterio de razonabilidad.[21] En ese sentido, tanto los estatutos como la casuística laboral han reconocido y protegido el derecho de discreción y dirección empresarial.[22]

Por consiguiente, "al adjudicar este tipo de controversia [debemos abstenernos de] sustituir el criterio del patrono querellado por lo que hubiéramos hecho en su lugar".[23] En este tipo de casos, el rol del foro sentenciador "se limita a aplicar el texto de la ley, su jurisprudencia interpretativa, y las normas razonables contenidas en el reglamento del patrono, de haberlo".[24]

**B.**

Es norma conocida que los tribunales apelativos no intervendrán con las determinaciones de hechos ni las adjudicaciones de credibilidad realizadas por el TPI, al menos que dicho foro haya incurrido en error manifiesto, pasión, prejuicio o parcialidad.[25] Nuestro máximo Tribunal ha indicado que un juzgador incurre en pasión, prejuicio o parcialidad cuando actúa "movido por inclinaciones personales de tal intensidad que adopta

---

[20] *Jusino et al., v. Walgreens*, 155 DPR 560, 573 (2001); *Srio. del Trabajo v. GP Inds., Inc.,* supra, págs. 244-245; *Secretario del Trabajo v. ITT*, supra, págs. 543-544.
[21] *Ortiz Ortiz v. Medtronic, supra*, pág. 773; *Jusino et al., v. Walgreens*, supra, pág. 572.
[22] *Díaz v. Wyndham Hotel Corp.*, supra, pág. 377.
[23] *SLG Torres-Matundan v. Centro Patología*, *supra*, pág. 941.
[24] *Íd.*
[25] *Barreto Nieves et al. v. East Coast*, 213 DPR 852, 889 (2024); *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012); *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009).

posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna".[26] Por otra parte, incurre en error manifiesto cuando la apreciación de la prueba se aparta de la realidad fáctica o es inherentemente imposible o increíble.[27]

Asimismo, los tribunales superiores sólo podrán intervenir con las conclusiones cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico sobre la totalidad de la prueba.[28] Lo anterior se debe a que los jueces del foro primario son quienes están en mejor posición de aquilatar la prueba y adjudicar credibilidad porque tienen la oportunidad de observar el comportamiento de los testigos mientras ofrecen su testimonio y las circunstancias que acompañan tales declaraciones.[29] De hecho, "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley".[30] Sin embargo, los foros apelativos solo cuentan con "récords mudos e inexpresivos".[31] Por lo tanto, son pocos los casos en donde se ha concluido que el foro de instancia incurrió en pasión, prejuicio, parcialidad o error manifiesto.[32]

Conforme a la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la

---

[26] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).
[27] *Peña Rivera v. Pacheco Caraballo*, 213 DPR 1009, 1025 (2024); *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018).
[28] *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).
[29] *Santiago Maldonado v. Alvelo Rivera*, 217 DPR ___ (2026), 2026 TSPR 14 (resuelto el 5 de febrero de 2026); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778-779 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021).
[30] Regla 110 (D) de Evidencia, 32 LPRA VI, R. 110; *Rivera Menéndez v. Action Service*, supra, pág. 444; *SLG Rivera Carrasquillo v. AAA*, supra, pág. 357.
[31] *SLG Rivera-Pérez v. SLG Díaz-Doe et al.*, 207 DPR 636, 658 (2021), citando a *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356.
[32] *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

credibilidad de los testigos". La intervención de un foro apelativo con la evaluación de la prueba testifical procede "en casos en que un análisis integral de dicha prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia".[33] Por ende, la parte apelante que cuestione una determinación de hechos realizada por el foro primario debe fundamentar la existencia de pasión, prejuicio o parcialidad, o señalar el error manifiesto.[34]

### III.

Para poder analizar un planteamiento sobre la apreciación de la prueba, es necesario que la parte que impugna el criterio del foro primario nos coloque en posición para revisar la evidencia que este último tuvo ante sí. Por ello, resulta imperativo que la parte que cuestiona la apreciación de la prueba oral provea la evidencia necesaria para examinar el asunto.

En nuestro caso, Felcon Automotive, Inc. centró la impugnación de la *Sentencia* en la apreciación de la prueba oral. A tales fines, este Tribunal dictó *Resolución* el 13 de marzo de 2026, en la cual denegamos la utilización de los audios en Pen Drives para impugnar la apreciación de la prueba y ordenamos presentar una transcripción de la prueba oral, conforme a la Regla 76 de nuestro Reglamento. Allí le apercibimos la consecuencia del incumplimiento.

Así las cosas y luego de transcurrir más de treinta días de nuestra Resolución, Felcon Automotive, Inc. no acompañó la transcripción, según ordenada. Forzosamente no nos encontramos en la posición para intervenir con las determinaciones del foro primario.

---

[33] *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356, citando a *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986).
[34] *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356; *Flores v. Soc. de Gananciales*, 146 DPR 45, 50 (1998).

**IV.**

Por los fundamentos antes expuestos, se confirma la Sentencia emitida el 17 de febrero de 2026, y notificada el 19 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones